IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2006 Session

## DOUGLAS EDWARD CORDER v. VALERIE JEAN CORDER

**An Appeal from the Circuit Court for Shelby County**
**No. 154501-6     George R. Ellis, Special Judge**

_____

**No. W2005-01711-COA-R3-CV - Filed November 30, 2006**

_____

This case involves a divorced parent's obligation to support college-age children. After the divorce, the mother was the primary residential parent for the parties' two children, who are now adults. In 1999, when both children were still minors, the father's child support obligation was increased, and he was ordered to provide to the mother financial documents and financial information necessary to assist the children with their private high school and college expenses. The mother later filed a petition for contempt, arguing that the father failed to comply. At a 2001 contempt hearing, the mother asked that the father be held in contempt for, among other things, his failure to provide Mother with his 2000 tax returns for a financial aid application for the older child's Ivy League college tuition. The trial court reserved the issue until further evidence could be presented. Soon after the hearing, in June 2001, the older child graduated from high school and the father unilaterally reduced his child support payments without seeking a modification of the trial court's support order. Four years went by without a court hearing, and both children reached majority. In 2005, the father filed a petition to resolve all outstanding matters and close the case. After a hearing, the trial court determined that the father was in contempt of court for his failure to provide the mother with the financial documents necessary to complete a financial aid application for the older child's college education and awarded damages to Mother. The trial court further held that the father was not permitted to unilaterally reduce his child support payments when the older child graduated from high school and, consequently, assessed a child support arrearage against him. The father appeals. We affirm in part and reverse in part holding, *inter alia*, that once the parties' child was emancipated, the trial court was without authority to require the father to provide financial documents to assist her in obtaining college financial aid.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed in Part, Affirmed in Part, Vacated in Part, and Remanded for Further Proceedings**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined; ALAN E. HIGHERS, J., dissents in part and concurs in part.

William Bryan Penn, Memphis, Tennessee, for the appellant, Douglas Edward Corder.

Clifford M. Cole, Germantown, Tennessee, for the appellee, Valerie Jean Corder.

## OPINION

Respondent/Appellant Douglas Edward Corder ("Father") and Petitioner/Appellee Valerie Jean Corder ("Mother") were divorced by final decree on October 19, 1998, and Mother was designated the primary residential parent for the parties' two children, Victoria Vance Tronolone Corder (born October 20, 1982) and Alexander John Tronolone Corder (born December 7, 1984). The trial court found that Father was voluntarily unemployed or underemployed, determined his earning capacity, and ordered him to pay $1,200 per month in child support based on that earning capacity. Mother had requested that Father be required to pay for extraordinary educational expenses, because the minor children attended private schools. This request was denied. The final decree ordered Father to maintain health and dental insurance on the parties' children and to pay Mother a lump sum of $10,000 as a share of the marital property.

On April 14, 1999, Mother filed a petition for scire facias, alleging that Father had failed to comply with his obligations under the final decree. On April 19, 1999, Father tendered to Mother a check in the amount of $7,200. On April 27, 1999, the trial court entered an order finding Father to be in contempt for failing to pay Mother $1,496.52 as his share of the children's medical and dental expenses, and the $10,000 lump-sum payment that was awarded to Mother as marital property. Father was ordered to pay these items as well as $21,600 in future child support for eighteen months. The trial court found, however, that Father had purged himself of contempt for back child support by tendering the $7,200 check.

The order on Mother's contempt petition included a provision requiring Father to complete and give to Mother any financial information that would pertain to the children's educational expenses. The order provided:

> [Father must] fully, accurately, and promptly complete and return to [Mother] any and all documents, applications, and things pertaining to the education of the parties' children, whether said request pertains to college, high school, or middle school, including, but not limited to any requests for financial information, financial aid, or scholarships necessary for same.

The trial court again denied Mother's request to require Father to pay toward the children's extraordinary educational expenses.

In September 1999, Mother filed a petition to modify, asking the trial court to, among other things, increase the child support award and order Father to contribute to the private school expenses of the parties' children. In this petition, Mother asserted that Father had become gainfully employed and was able to pay the increased child support and the educational expense. She contended Father

did not visit the children and had moved out of the jurisdiction without providing Mother his new address or telephone number. The matter was assigned to a divorce referee. On April 26, 2000, based on the referee's findings, the trial court entered an order concluding that Father had failed to visit the children, increasing Father's monthly child support obligation to $1,558, and requiring him to pay Mother $4,088.11 for his share of the children's medical expenses.

In the fall of 2000, the parties' older child, Victoria, was a senior in high school. In November of that year, Victoria secured early admission to Dartmouth College. Consequently, Mother requested Father's tax records and financial information for Victoria's college financial aid applications. According to Mother, Father refused to timely, accurately, or completely provide either his income tax returns or the requested forms.

Subsequently, the parties filed various motions regarding Father's child support obligation. Mother apparently filed a Second Petition for Writ of Scire Facias and Citation for Contempt against Father, but a copy of that petition is not in the record.[1] Nevertheless, a consent order was later entered by the trial court which referred to the petition. The consent order disposed of some of the parties' motions and stated that counsel for Father "agrees to accept service on the plaintiff's Second Petition for Contempt and enter his/defendant's appearance in same."

On April 12, 2001, the trial court held a hearing on Mother's second petition for scire facias and petition for contempt. Both Mother and Father testified, and a transcript of the hearing is included in the record. At the conclusion of the hearing, the trial court held Father in contempt and ordered him to pay Mother $7,125.25 in child support arrearages, $2,247 in past due medical bills, and attorney's fees. After the trial court's ruling, counsel for Mother requested that Father be required to give her a copy of his 2000 tax return, which was due to be filed with the IRS three days from the hearing, so that Mother and Victoria could complete Victoria's application for financial aid at Dartmouth. The trial court specifically reserved its ruling on this request until further proof could be adduced.

On April 30, 2001, the trial court entered an order titled "Order on Second Petition for Writ of Scire Facias and Citation for Contempt" consistent with its oral ruling. The order stated:

> [T]he Orders [sic] of the Court dated April 24 [sic], 1999, requiring [Father] to provide [Mother] with financial information for college admission or financial aid is ambiguous and the Court will require further proof on this issue to find [Father] in contempt of Court for failure to provide his 2001 [sic] income tax returns to [Mother]."

---

[1]Mother asserts in her brief that Father deliberately failed to designate this petition as part of the record on appeal, and she attached a copy of the petition as an appendix to her appellate brief. In deciding this appeal, we cannot consider the petition attached to her brief, because it was not properly included in the appellate record. *See* Tenn. R. App. P. 24.

On May 11, 2001, the trial court entered a consent order disposing of unresolved motions filed by the parties. May 17, 2001, Father filed a motion for a rehearing or, in the alternative, a motion to alter or amend the trial court's April 30, 2001 order and for a stay of execution of that order. Father's motion was not set for a hearing.

Four years passed without substantial activity by the trial court. In 2005, Father filed a Motion to Terminate Matters and Close Case, based on the fact that both children had reached majority. The appellate record does not contain a copy of Father's motion, but the memorandum of law in support of the motion is included as trial Exhibit 3.[2] Counsel for Father delivered directly to the trial judge a letter written by Father, along with a compilation of documents, purportedly showing his compliance with the trial court's orders over the years. Mother later filed a motion to strike the letter and the accompanying documents offered by Father in his *ex parte* communication and for sanctions against him for the improper communication.

On March 10, 2005, the trial court heard arguments on Father's motion, but ultimately determined that it could not rule on the motion without hearing proof. The appellate record does not include a transcript of that hearing. An order was entered stating that the matter was continued until June 1, 2005, "for the purpose of disposing of any and all issues before this Court." In the order, the trial court asked the parties to submit memoranda "on the issues relevant to contempt, damages and bankruptcy, as related to this cause."

On June 1, 2005, the trial court conducted a hearing as scheduled. Both Mother and Father testified at the hearing. Mother stated that she is an attorney who has practiced in the community for twenty-four years. She testified that Father did not comply with the trial court's April 1999 order requiring him to provide financial information to her in order to obtain financial aid for either of the children to attend college. Regarding Victoria, Mother stated that in order to obtain financial aid, Dartmouth College required that both parents supply the college with tax records and financial information. When Mother applied to Dartmouth for such aid on behalf of Victoria, she asked Father to provide her with his tax returns and other financial information. Mother claimed that Father "continuously and intentionally refused" to provide the necessary information or otherwise assist her in obtaining financial aid for Victoria. Though Father submitted some documentation, Mother stated, the information was incomplete and contained misrepresentations. From the documentation submitted, the college gave Mother $11,812 in financial aid the first year, and Mother paid $31,621 out-of-pocket for Victoria's first year of college expenses.

Mother testified that, for the school years beginning in 2002 and 2003, Father did not comply with any request to provide tax records or financial information. Consequently, she could not complete an application for financial aid for Victoria. In each of those years, Mother paid $48,780 in college expenses for Victoria. In Victoria's final year at Dartmouth in 2004, Mother asked

---

[2] The memorandum of law ordinarily would not have been included in the record. *See* Tenn. R. App. P. 24(a); *see Willis v. Tenn. Dep't of Correction*, 113 S.W.3d 706, 709 n.2 (Tenn. Ct. App. 2003). This memorandum, however, was entered as a trial exhibit.

Dartmouth to waive the requirement that Father file financial records, based on the fact that his records were either unreliable or were not provided in the years past. The waiver was granted, and Mother said that it was the first waiver the school had granted in over two hundred years. Mother said that Father finally turned in a financial information form, but it was disregarded by the school because by then the waiver had already been granted. In that year, Mother's out-of-pocket expenses were $12,000, with the rest paid through school financial aid.

Mother testified that Dartmouth required students to provide a notarized certification from their health insurance carrier stating that they are covered by health insurance. In the absence of such certification, she said, the college requires that the students purchase the school's health insurance policy. Although Mother repeatedly asked Father to send the certification to Dartmouth, she said he would not do so. When Mother contacted Father's insurance company directly in an attempt to get the certification, she was told that Father had forbidden the insurance agents from communicating directly with her. Consequently, for the four years Victoria attended Dartmouth, Mother purchased the mandatory campus health insurance at a total cost of $4,108.

Mother also testified that Father failed to provide financial information for the college application of the parties' son, Alexander. Alexander attended the University of Arkansas for one year in 2003, and thereafter attended Southwest Community College.[3] Mother paid his college expenses without any financial aid. In total, Mother estimated that she borrowed approximately $90,000 against a home equity line of credit to cover the college expenses for the parties' two children.

Mother testified that, after the parties' daughter reached majority and graduated from high school in June 2001, Father unilaterally reduced his child support payments, even though no court order had been entered permitting him to do so. Thus, she asserted, he was $7,657.69 in arrears in child support, which included interest at the statutory rate of 12%, for the time period between the April 2001 order and June 2003 when the younger child reached majority and graduated from high school. Mother also testified that Father was $1,789.96 in arrears for his share of the medical expenses the children incurred during that time period.

Mother indicated that, after the April 2001 order holding Father in contempt for failure to pay child support and medical expenses, Father filed bankruptcy in both of their names. As a result, Mother had to refinance her house, which cost her $3,227 in fees. She maintained that Father had not paid the amounts required by the trial court in previous court orders for child support arrearages, medical arrearages, or attorney's fees. Mother requested a total judgment of $19,811.57 against Father based on these unpaid judgments, plus interest.

---

[3]The trial court did not award Mother any relief as to Father's failure to provide financial information for Alexander's college applications.

When asked whether she and Father had an agreement that he would continue to support the children beyond age eighteen, Mother replied that "[t]he law requires him to pay child support beyond age eighteen . . . ."

Father also testified at trial. By the time of trial, he had lived in Oregon for six years. During his testimony, Father introduced into evidence a spreadsheet he prepared, listing the dates and amounts of the child support payments he made to Mother after the April 2001 order. He acknowledged that, when Victoria became emancipated, he reduced his child support payments from the court-ordered $1,558 per month to $1,025 per month. Father claimed that he did so based on the advice of his attorney at the time. The parties ultimately agreed that, if Father were not permitted to reduce his child support payments, he owed $4,172 plus 12% statutory interest, which Mother calculated to be $7,657.69.[4]

Father sought to introduce into evidence a letter from his former attorney to Mother's attorney, dated July 9, 2001, which related to Father's reduction in child support payments and the reasons therefor. The trial court found that the letter constituted inadmissible hearsay and disallowed it. Father then submitted the letter solely as an offer of proof for appeal.

Father acknowledged that he was obligated to provide Mother with tax records and financial information for the children's education. He claimed, however, that he complied with this obligation. He insisted that he had repeatedly sent his tax records and financial information to Mother for Victoria's first year at Dartmouth, but that Mother refused to accept that information "because it benefited [sic] them I believe not to get my tax returns." Therefore, Father said, he faxed the necessary information directly to Dartmouth. He claimed that the information he provided to Dartmouth in 2001 was accurate. Father stated that after Mother refused to accept the information he sent in 2001, he "learned his lesson" and subsequently began sending the necessary information directly to his daughter.

As to the next two years, 2002 and 2003, Father claimed he sent his tax returns directly to Victoria. In 2003, he said, Victoria never contacted him to ask him to fill out the college's financial aid forms. Father said that for Victoria's senior year at Dartmouth, 2004, he again sent Victoria his tax returns, and Victoria asked him to fill out the necessary financial aid forms. He filled out the forms and sent them to Dartmouth. Father claimed that there was never a year in which he did not comply with a request for financial documents. He acknowledged an e-mail to him from Dartmouth, indicating that the college had received financial information from him for the years 2001 and 2004, but received no information from him for 2002 and 2003.

On the issue of the children's health insurance, Father testified that he sent Mother a letter in 2003 telling her that the children were covered under his health insurance. He said that he

---

[4]Father acknowledged that he had filed bankruptcy. He said that he received an order of discharge from bankruptcy on January 9, 2002, from an Oregon bankruptcy court. His debts related to child support were not dischargeable in bankruptcy.

included with the letter his CIGNA Healthcare I.D. cards. He asserted that he also advised Dartmouth that Victoria was covered by his health insurance.

Regarding Alexander, Father stated that he was not asked to send information for financial aid to the University of Arkansas, and that he was unaware that his son was even attending the college until after he was already enrolled. He also maintained that he did not receive a request for financial aid documents for the local community college his son attended the next year.

During the proceedings, counsel for Father argued that the trial court's April 2001 order was erroneous to the extent that it required Father to provide financial documents to assist with the children's educational expenses after the children had reached the age of majority.

At the conclusion of the hearing, the trial court issued an oral ruling. It first found that Father was in contempt of court because he "failed to fully, accurately and promptly complete and return to her any and all documents, applications and things pertaining to education of the parties' daughter for the year 2002 and 2003 . . . ." As a result of Father's failure to provide the documents, the trial court found, Mother was "damaged by having to pay excessive fees to Dartmouth College in the amount of $37,560.00 by his inaction or by his refusal to send her the right information ordered." In addition to these damages, the trial court awarded Mother back child support of $4,172, plus interest, and $1,789.96 in back medical expenses, implicitly concluding that Father was not entitled to unilaterally reduce his child support obligation. The trial court denied Mother's request for damages relating to Father's alleged failure to provide health insurance information to Dartmouth College for Victoria. Finally, the trial court found that, because Father was in contempt of court and his actions caused the instant litigation, Mother should be awarded $17,325 in attorney's fees as a sanction.

On June 27, 2005, the trial court entered an order consistent with its oral ruling. At the outset, the order clarified that the June 1, 2005 hearing was on Mother's petition "for a Second Writ of Scire Facias and to Cite the Respondent Douglas Corder for Civil and Criminal Contempt" as well as Father's motion to "Terminate All Matters and Close Case." The trial court also said that the hearing and the resulting order addressed the issue specifically reserved in its April 30, 2001 order, namely, whether Father had provided Mother with financial information for college admission or financial aid in accordance with the court's previous orders. The trial court noted that, "[a]t the close of proof offered in this matter the petition was amended to conform with the proof offered in this cause." Having clarified the subject matter of the hearing and the order, the written order, consistent with the oral ruling, awarded Mother $37,560 in damages for Father's refusal to send financial information in 2002 and 2003, $7,657.69 (including interest) in back child support, $1789.96 in back medical expenses, and $17,325 in attorney's fees. From this order, Father now appeals.

On appeal, Father challenges the trial court's decision in several respects. He contends that the trial court erred in determining that he was in contempt of its April 1999 order for failing to provide financial documents to Mother in 2002 and 2003, because his obligation to provide support for his children ended when they reached majority. In addition, Father argues that (1) his due process

rights were violated because he did not have advance notice of the scope of the June 1, 2005 hearing; (2) the trial court improperly heard issues that should have been dismissed based on the doctrine of *res judicata*; (3) the trial court violated the double jeopardy clause of the Tennessee and federal constitutions; (4) the trial court improperly excluded as hearsay the July 9, 2001 letter from Father to his attorney; (5) the trial court incorrectly determined child support arrearages; and (6) the trial court erred in awarding Mother attorney's fees.

On appeal, Mother argues that the trial court's ruling was correct in all respects, except that the court erred in awarding her less damages for Father's contempt than the full amount she claimed, $155,721. Both parties seek attorney's fees expended in this appeal.

We review the trial court's findings of fact *de novo* on the record, presuming those findings to be correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Conclusions of law are reviewed *de novo*, with no such presumption of correctness. ***Id.***; ***Hawks v. Westmoreland***, 960 S.W.2d 10, 15 (Tenn. 1997). The trial court's credibility determinations are given great weight on appeal, and such determinations are not reversed absent clear and convincing evidence to the contrary. ***See Orten v. Orten***, 185 S.W.3d 825, 830-31 (Tenn. Ct. App. 2005) (quoting ***Wells v. Tenn. Bd. of Regents***, 9 S.W.3d 779, 783 (Tenn. 1999)).

We first address the propriety of the trial court's decision to hold Father in contempt of the April 1999 order for failing, in 2002 and 2003, to provide Mother with financial records and other information pertaining to Victoria's college education. Father argues first that the trial court erred because the language in the April 1999 order indicates that it was intended to apply only during the children's minority. In the alternative, he asserts that, to the extent that the order attempts to reach beyond the children's minority, the order is invalid because "the power of the court to enforce an order of support is statutory and exists only during minority." ***Hawkins v. Hawkins***, 797 S.W.2d 897, 898 (Tenn. Ct. App. 1990). For both reasons, he argues, the trial court erred in holding him in contempt for failing to provide financial records for Victoria's benefit in 2002 and 2003, after she had reached majority.

In response, Mother points out that the language in the April 1999 order does not limit Father's obligation to the children's minority, and contends that the order contemplates that Father's duty to provide financial records and information would extend throughout the college years of both children. She asserts that requiring Father to "perform parental duties necessary" to provide for the children's educational needs constituted a valid and reasonable exercise of the trial court's authority, in accordance with sound public policy. The trial court properly exercised its discretion, she maintains, in relieving Father of any obligation to pay for extraordinary educational expenses for the children, while imposing on him a duty to cooperate with Mother's efforts to minimize the educational expenses she undertook to pay. Mother notes that the provision in the April 1999 order was a requirement only that Father produce documents, not a requirement that Father provide financial "support," and that his failure to produce such documents was a legitimate basis for the contempt prosecution. Mother concedes that this is an issue of first impression in Tennessee.

In this case, the trial court ordered Father to complete and provide Mother with "any and all documents, applications, and things pertaining to the education of the parties' children, whether said request pertains to college, high school, or middle school, including, but not limited to any requests for financial information, financial aid, or scholarships necessary for same." This provision is not, by its own terms, limited to the children's minority. It compels Father to provide documents and other "things pertaining to the education of the parties' children" with a specific reference to their college education. Since children typically apply for college and college financial aid while they are still in high school, the requirement that documents be provided for the children's college education could apply both prior to and after their emancipation. Father's compliance with this order in 2001, before Victoria graduated from high school, is not an issue in this appeal. Likewise, although there was testimony at trial about whether Father provided such documents for the college education of the parties' son, Alexander, the trial court made no findings on this issue and it is not raised on appeal. Therefore, the only issue on appeal relates to the records required by Victoria's college for financial aid applications in 2002 and 2003, after she had graduated from high school and was enrolled at Dartmouth.

In this case, of course, there was no agreement between the parties as to the children's educational expenses beyond high school.[5] Therefore, at issue is the trial court's authority to impose on a divorced parent any obligation related to the education of an emancipated child who has graduated from high school.

As background, in England and in early American common law, the duty of a parent to support his children, regardless of their age, was a moral obligation and not a legal duty. *See In re Conservatorship of Jones (Jones v. Jones)*, No. M2004-00173-COA-R3-CV, 2004 WL 2973752, at *5 (Tenn. Ct. App. Dec. 22, 2004) (citations omitted). As the common law developed, it became accepted in most jurisdictions that a parent has a duty at common law to support his minor children, but no obligation to support a child past the age of majority.[6] *Id.* (citations omitted). In Tennessee, this common law obligation is codified at Tennessee Code Annotated § 34-1-102, which provides:

(a) Parents are the joint natural guardians of their minor children, and are equally and jointly charged with their care, nurture, welfare, education and support and also with the care, management and expenditure of their estates. . . .

* * *

(b) Parents shall continue to be responsible for the support of each child for whom they are responsible after the child reaches eighteen (18) years of age if the child is in high school. The duty of support shall continue until the child graduates from high

---

[5]Because the parties did not enter into an agreement to support the children past the age of their minority or to pay for their college expenses, cases in which a parent was ordered to complete financial aid applications pursuant to a marital dissolution agreement are inapposite. *See Bonhotel v. Bonhotel*, No. FA910055322S, 2000 WL 1506893 (Conn. Sup. Ct. Sept. 20, 2000); *Aroesty v. Cohen*, 815 N.E.2d 639 (Mass. Ct. App. 2004).

[6]Parents may be obligated to support adult children who are disabled under certain circumstances. *See Jones,* 2004 WL 2973752, at *5. The children involved in this case are not disabled.

-9-

school or the class of which the child is a member when the child attains eighteen (18) years of age graduates, whichever occurs first.

T.C.A. § 34-1-102(a), (b) (2001). Thus, under Tennessee law, a parent is obligated to provide support for children only until they turn eighteen years old or graduate from high school, whichever occurs later. *See Kesser v. Kesser*, No. W2003-02392-SC-R11-CV, 2006 WL 2439758, at *4 (Tenn. Aug. 24, 2006); *Hopkins v. Hopkins*, 152 S.W.3d 447, 449 (Tenn. 2004). Other statutory provisions empower trial courts to make decisions regarding the parents' obligation to provide financial support for their minor children in accordance with the child support guidelines. *See* T.C.A. § 36-5-101(e)(1)(A) (2005). A trial court's power to order child support and to enforce support orders through its contempt powers exists only during the child's minority, unless the parties agree otherwise. *Garey v. Garey*, 482 S.W.2d 133, 135 (Tenn. 1972); *Hawkins*, 797 S.W.2d at 898 (citing *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975)); *see also Bryan v. Leach*, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001).

Thus, in Tennessee, a parent has no legal obligation to pay for the college education of a child who has reached the age of majority, except when the parent contractually assumes such a duty.[7] *See Bryan v. Leach*, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001). Therefore, the trial court did not have the authority under the common law or the current Tennessee statutes to order Father to support his child after she reached majority. *Lichtenwalter v. Lichtenwalter*, No. M2003-03115-COA-R3-CV, 2006 WL 236945 (Tenn. Ct. App. Jan. 30, 2006), *appeal granted* (Aug. 21, 2006); *see Larson v. Larson*, 694 N.W.2d 13, 17-18 (N.D. 2005) ("The mere hope that 'divorced parents would continue to support their children in seeking college educations . . . is a far cry from concluding a court can impose an obligation upon the parents to do so as a matter of law." (quotations omitted)).

Perhaps implicitly recognizing this reality, Mother argues that the trial court's order does not require Father to give "support" in the financial sense, but rather, that the amended decree "affirmed a duty of document production" that would assist Victoria in obtaining her college education. Therefore, she claims, the trial court's authority arises from its ability to issue orders for the established needs of the children past the age of minority. Mother cites *Nash v. Mulle*, 846 S.W.2d 803 (Tenn. 1993), for the proposition that a parent may be ordered to perform acts for the specific benefit of his children's education, even when such acts will be required to be performed after the children reach majority.

In *Nash*, the trial court ordered the father to pay $3,092 per month in child support, with $1,780 to be reserved for a trust fund established for the child's college education. *Nash*, 846 S.W.2d at 804. The father appealed, arguing that requiring him to establish such a trust fund

---

[7]Some states have held that a parent has a legal duty to provide, or to aid in providing, a college education for his or her child if the child demonstrates the ability and willingness to attain a higher education and the parent has sufficient means to provide financial assistance without undue hardship. *See Thrasher v. Wilburn*, 574 So. 2d 839 (Ala. Civ. App. 1990); *Strom v. Strom*, 142 N.E.2d 172, 179 (Ill. App. Ct. 1957); *but see Larson v. Larson*, 694 N.W.2d 13, 17-18 (N.D. 2005) (holding that a statute allowing courts to order post-majority support when "appropriate" does not provide authority for a court to order a parent to pay college expenses).

impermissibly required him to support the child after she reached majority. The court of appeals agreed and reversed the decision of the trial court on that basis. *Id.* The Supreme Court reversed the court of appeals, holding that, "[a]lthough child support payments may not extend beyond the child's minority . . . , the benefits from such payments can." *Id.* In reaching that conclusion, the Court noted that "the use of a trust fund for just such a purpose is explicitly approved by the [child support] guidelines." The Court cited the section in the guidelines for criteria deviation, which provide specifically that, in cases where the obligor's monthly income exceeds $6,250, "the establishment of educational or other trust funds for the benefit of the child(ren)" might be required. *Id.* at 807. The reasoning employed by the court of appeals, the Court noted, "refuses to recognize the laudable goal of post-secondary education . . . ." *Id.* The Court also noted that parents with higher incomes typically save for college over time, but requiring Mother to save in such a manner would deplete the child support award. Therefore, the Court determined that requiring Father to establish a trust fund for his child's college education during the child's minority was a permissible exercise of the trial court's discretion.

This case is distinguishable from the situation in *Nash*. The acts at issue in this appeal were required of Father *after* Victoria reached majority, whereas the order in *Nash* required the father to contribute *during* the child's minority for her post-majority benefit. The acts required of the parent in *Nash* were akin to requiring Father, during Victoria's senior year in high school, to provide documentation for her college application and request for financial aid. The trial court clearly had authority to impose this requirement. Most importantly, the Court in *Nash* relied on the provision in the child support guidelines for the establishment of a college trust fund as indicating legislative approval. Mother has cited no statutory authority for requiring Father, after the parties' child was emancipated, to perform acts for the child's benefit.

In this case, we cannot distinguish between financial "support" and other types of "support" for emancipated children, particularly in light of the statutory description of a parent's obligation to care for minor children. In Tennessee Code Annotated § 34-1-102(a), parents are charged with their minor children's "care, nurture, welfare, education, and support. . . ." All of those obligations would be encompassed within the term "support" when referring to a parent's obligation to "support" his children during minority. Moreover, although Father in this case was not ordered to provide post-majority financial support, the tasks he was ordered to perform were for the direct financial benefit of the children. For these reasons, we find that ordering Father to produce documents for the benefit of the children's college education must be deemed a "support" obligation, and the trial court was without authority to impose such a requirement on Father past the children's minority. Any order reaching beyond the age of minority constitutes an invalid exercise of jurisdiction and is unenforceable through the court's contempt powers. *See Hawkins*, 797 S.W.2d at 898.

Accordingly, we conclude that, once Victoria was emancipated, the trial court was without authority to order Father to support her by providing financial documents to assist her in obtaining a college education. Whatever Father's moral obligation to his child, he had no legal duty to do so. Therefore, we reverse the trial court's holding that Father was in contempt of its April 1999 order

-11-

in 2002 and 2003 by failing to provide Mother with the financial documents necessary to obtain financial aid for Victoria's college expenses after she had reached majority.

Father next argues that the trial court erred in addressing issues at the hearing other than (1) those raised in his Motion to Terminate All Matters and Close Case and (2) the issue reserved in the April 2001 order, i.e., whether he should be held in contempt for failing to provide Mother with financial documents in 2001. Because Mother's second petition for scire facias is not included in the record on appeal, he contends that we must assume that it was never filed and that he received no notice of it. He also notes that Mother filed no written motions for contempt pertaining to child support, medical expenses, or attorney's fees. Father argues that he was not put on notice that the trial court would be addressing such matters at the hearing and, consequently, his due process rights were violated.

Assuming *arguendo* that this would be a due process violation, from our review of the record, it appears that both parties were put on notice (indeed Father's motion requested) that the June 2005 hearing would address all matters that had not yet been resolved. This included Father's compliance with his obligation to support the children from the time of the April 2001 order up until the younger child was emancipated in June 2003. In fact, in the memorandum in support of Father's "Motion to Terminate All Matters and Close Case," he asserts that his child support obligation should be terminated based on the children's emancipation and the fact that "he has fully discharged his obligations and met the requirements of this case." This clearly puts at issue the matter of Father's compliance with the trial court's support orders. In the order of continuance issued after the March 2005 hearing, the trial court stated that Father's motion "must be supported by evidence and cannot be disposed of by memorandum only," indicating that evidence regarding Father's discharge of his obligations would be taken at the upcoming hearing. The continuance order also asked the parties to submit briefs on issues related to "contempt, damages, bankruptcy, as related to this cause," further indicating that the June 2001 hearing would encompass a wide range of issues. Father fully participated in the hearing and made no objection based on lack of notice. The trial court's order provided that "the petition was amended to conform with the proof offered in this cause." Under these circumstances, Father's argument is without merit.

Father also argues that, because the June 2005 hearing was based on Mother's Second Petition for Scire Facias, which was also considered at the April 2001 hearing, then the issues raised in the petition were *res judicata*. However, Father identifies no issues resolved in the April 2001 order that were revisited in the June 2005 order. Rather, in its June 2005 order, the trial court addressed the issue that was expressly reserved after the April 2001 hearing, as well as the obligations that accrued *after* the April 2001 order was entered. Moreover, because the April 2001 order reserved an issue, it was not a final order, and would not have *res judicata* effect. **See Richardson v. Tenn. Bd. of Dentistry**, 913 S.W.2d 446, 459-60 (Tenn. 1995). Therefore, Father's *res judicata* claim is also without merit.

Father also claims that the trial court erred in holding inadmissible the July 9, 2001 letter from his attorney to Mother's attorney, informing him that Father's reduced June 2001 child support

payment "is not a partial payment since Victoria has graduated high school. The proration is allowed by law." Father argues that the letter is not inadmissible hearsay because it was not being offered for the truth of the matter asserted, but was offered instead to demonstrate his reliance on advice from counsel in lowering his child support payments.

Decisions regarding the admissibility of evidence rest within the sound discretion of the trial court. ***Danny L. Davis Contractors, Inc. v. Hobbs***, 157 S.W.3d 414, 418-19 (Tenn. Ct. App. 2004) (citing ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 442 (Tenn. 1992)). Assuming that the letter at issue is not hearsay, as Father argues, it has no relevance because Father's reliance on advice of counsel is not a valid defense to his failure to obey an order of the court. ***See Churchwell v. Callens***, 252 S.W.2d 131, 132 (Tenn. Ct. App. 1952), ***cited in Rice v. Rice***, No. E2003-01336-COA-R3-CV, 2004 WL 1698217, at *3 (Tenn. Ct. App. July 29, 2004). Thus, even if the trial court erred, such an error was harmless and does not provide a basis for reversal. ***See Burrell v. Burrell***, No. 03A01-9809-CV-00291, 1999 WL 172670, at * 2 (Tenn. Ct. App. Mar. 24, 1999).

Father also argues that the trial court erred in calculating his child support arrearage, because he was entitled to an automatic reduction in his payments to $1,025 after Victoria graduated from high school in June 2001. He notes that he filed a motion to modify child support in March 2001, which was not adjudicated at the April 2001 hearing. This, he argues, satisfies the application requirement of Tennessee Code Annotated § 36-5-101(g)(1), which authorizes the trial court to modify a decree of support "[u]pon the application of either party . . . ." T.C.A. § 36-5-101(g)(1) (2005). Thus, Father claims, based on his application for a support reduction and his daughter's emancipation, he was entitled to reduce his monthly child support payments to $1,025 in June 2001 without further orders of the court.

It is well settled that the retroactive modification of child support orders is barred, and that, generally, the "burden [is] on the obligor to come into court and seek any current or prospective relief to which he may be entitled, by means of a formal court order." ***Rutledge v. Barrett***, 802 S.W.2d 604, 606-07 (Tenn. 1991). However, there is authority to support the claim that proration of a child support obligation without a court order, based on the child's emancipation, is not a retroactive modification of the child support award. ***Clinard v. Clinard***, No. 01-S-01-9502-CV00021, 1995 WL 563858, at *2 (Tenn. Sept. 25, 1995) (designated not for publication)[8]; ***Lichtenwalter v. Lichtenwalter***, No. M2003-03115-COA-R3-CV, 2006 WL 236945, at *7 (Tenn. Ct. App. Jan. 30, 2006), ***appeal granted*** (Aug. 21, 2006); ***Shupe v. Shupe***, No. 118, 1991 WL 16249, at *2 (Tenn. Ct. App. Feb. 12, 1991). These cases indicate that an obligor parent may, under appropriate circumstances, prorate his or her child support payments after a child is emancipated without first obtaining a court order, although it is prudent to request that the trial court modify the child support obligation.

---

[8]When a decision is designated "not for publication," it must be viewed as persuasive authority only. ***See State v. Rice***, 184 S.W.3d 646, 663 n.2 (Tenn. 2006); ***Lucas v. State***, 141 S.W.3d 121, 137 n.6 (Tenn. Ct. App. 2004); ***see also*** Tenn. R. Sup. Ct. 4(H)(1) (2006).

Regardless, proration may not be appropriate where the support order in effect requires the obligor parent to pay a lump sum for all of the children, without identifying the amount to which each child is entitled, and the circumstances justify holding the obligor parent responsible for the original amount of child support (or at least a disproportionate portion of the original amount) for the remaining minor children. For example, in *Bell v. Bell*, No. 01A01-9511-CH-00493, 1996 WL 548150 (Tenn. Ct. App. Sept. 25, 1996), the trial court had ordered the father of three children to pay $400 per month in child support. The father accrued an arrearage, and he later petitioned the trial court to credit his arrearage for a pro rata portion of the amount due after his oldest child reached majority. The trial court concluded that, under the child support guidelines, the father should have been making payments of $453 per month for the two remaining minor children. *Bell*, 1996 WL 548150, at *1. In light of this fact, the trial court treated the case as though the mother had filed a petition to modify the child support order, and it denied the father's petition. The appellate court affirmed, reasoning that the support order did not specify how much of the $400 was attributable to each child, and the $400 amount was less than the guideline amount for the remaining two children. Under these circumstances, the appellate court found, proration was inappropriate. *Id.* at *2; *see also Silverstein v. Rice*, No. W1999-01336-COA-R3-CV, 2000 WL 33146933 (Tenn. Ct. App. Oct. 20, 2000) (finding that the obligor father was not entitled to an automatic proration of his child support obligation upon the oldest child's majority when the total amount of support ordered was less than the amount required under the guidelines for the two remaining children).

In the instant case, as in *Bell*, the operative support order required Father to pay a lump sum amount for both children – $1,558 per month. It is unclear on this record whether the child support guidelines then in effect, based on Father's income at the time, would have required Father to pay $1,558 per month in child support for the remaining minor child, or whether Father's prorated payments of $1,025 were proper. These issues were not addressed by the trial court because it held that Father was not permitted to unilaterally reduce his child support award. Therefore, we must vacate the holding that Father had a child support arrearage of $7,657.69 and remand for the trial court to determine whether the circumstances justify holding Father responsible for the entire $1,558 per month for the younger child after June 2001, in light of the child support guidelines.

Finally, Father argues that the trial court erred in granting Mother $17,325 in attorney's fees. In light of our holding above, this portion of the trial court's order must be vacated and the cause remanded for reconsideration of the issue.

Both parties argue that they are entitled to attorney's fees incurred on appeal. Whether to award attorney's fees on appeal rests within the sound discretion of this court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). Under the circumstances, we decline to award attorney's fees on appeal to either party. All other issues raised on appeal are pretermitted.

-14-

The trial court's decision is reversed in part, affirmed in part, and vacated in part, and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are to be taxed equally to Appellant Douglas Edward Corder and his surety and Appellee Valerie Jean Corder, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE