IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 17, 2018 Session

## STATE EX REL. JANA RUTH ALFORD NICHOLS v. RANDALL NELSON SONGSTAD

Appeal from the Juvenile Court for Shelby County
No. Z4904          Nancy Percer Kessler, Special Judge

_____

No. W2016-02011-COA-R3-JV
_____

Father unilaterally modified his child support obligation without submitting a petition to modify to the trial court because his oldest child emancipated. The trial court found that Father had impermissibly modified his child support obligation based, *inter alia*, on the fact that Father failed to follow the Child Support Guidelines. Discerning no error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which W. NEAL MCBRAYER and BRANDON O. GIBSON, JJ., joined.

Daniel Loyd Taylor and John N. Bean, Memphis, Tennessee, for the appellants, Randall Nelson Songstad.

Herbert H. Slatery, III, Attorney General and Reporter; Brian A. Pierce, Assistant Attorney General, for the appellee, State of Tennessee, Department of Human Services.

Lee Ann Pafford Dobson, Germantown, Tennessee, for the appellee, Jana Ruth Alford Nichols.

## OPINION

### FACTS

The facts in this case are largely undisputed. Randall Nelson Songstad ("Father") and Jana Ruth Alford Nichols ("Mother") were divorced in the Chancery Court of Shelby

County ("chancery court") on January 30, 2006. A Permanent Parenting Plan ("the plan") was entered on May 17, 2006, which required Father to pay child support for the parties' two minor children in the amount of $1,154.00 per month. The plan included the language "[t]he parents acknowledge that court approval must be obtained before child support can be reduced or modified." Father and Mother both signed the plan.

In 2011, the eldest of the parties' two children emancipated after she graduated high school. After her emancipation, Father unilaterally prorated his child support payments by approximately fifty percent without filing a petition to modify or bringing his modification request before the court in any way. Mother, however, accepted Father's reduced child support payments for the next four years, until the parties' youngest child also emancipated in 2014.[1]

Mother, who became a Texas resident after the parties' divorce, applied for Title IV-D assistance[2] in Texas in 2014. After receiving little to no assistance in Texas, Mother filed for contempt in the chancery court. The State of Tennessee ("the state") then filed a notice of Title IV-D services and a notice to transfer to the Shelby County Juvenile Court ("juvenile court") in the chancery court on July 7, 2015. The matter was administratively transferred to the juvenile court pursuant to Tennessee Code Annotated section 36-5-402.[3] The state then filed a petition to establish arrears and/or to modify

---

[1] Father does not raise any issue concerning waiver on appeal.

[2] "Title IV of the Social Security Act is a federal-state cooperative venture that provides assistance to needy families who have been deprived of a parent through death, desertion or disability. 42 U.S.C. § 601–687." *Davis v. McClaran*, 909 S.W.2d 412, 414 (Tenn. 1995). "Title IV-D provides a wide variety of child support services to needy families[.]" *Id.* at 415. Title IV-D's authorization of appropriations section, 42 U.S.C. § 651, states

> "For the purpose of enforcing the support obligations owed by absent parents to their children and the spouse (or former spouse) with whom such children are living, locating absent parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children (whether or not eligible for aid under part A of this subchapter) for whom such assistance is requested, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part."

*Id.* (quoting 42 U.S.C. § 651).

[3] Tennessee Code Annotated section 36-5-402 states:

> In lieu of requesting a magistrate, the presiding judge may, with the agreement of all judges having child support jurisdiction in a particular county or counties, enter into agreements with juvenile courts to set, enforce, and modify support orders as provided in this part. In the event such an agreement is entered into, the juvenile court shall have jurisdiction over all support cases in such county, except as may otherwise be provided in the agreement, any contrary law notwithstanding[.]

Tenn. Code Ann. § 36-5-402(b)(2).

order on September 30, 2015, in the juvenile court. The matter was continued several times and was finally heard on June 9, 2016, by Magistrate Debra Sanders. The juvenile magistrate entered her findings and recommendations on June 21, 2016, in which the magistrate granted, in part, the petition to establish arrears and modify child support, as to the establishment of arrears only. The Magistrate additionally established arrears in the amount of $29,994.00 to be paid monthly by Father in the amount of $1,154.00 beginning July 1, 2016. Father filed a timely motion to rehear requesting a rehearing before the Presiding Judge.[4]

On July 27, 2016, Special Judge Nancy Percer Kessler heard the case.[5] The court entered an order on the same day finding that Father's request for rehearing was granted and taken under advisement. The juvenile court entered its final order on August 25, 2016, in which it found that Father was in arrears in the amount of $29,994.00. Father timely appealed this order.

## ISSUE

Father presents one issue on appeal, which we have slightly restated: Whether the trial court erred in not allowing Father to prorate his child support upon his oldest child's emancipation without a court order.

## STANDARD OF REVIEW

This Court reviews questions of the law de novo with no presumption of correctness. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013)). When reviewing child support determinations, however, this Court reviews those decisions "using the deferential 'abuse of discretion' standard." *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App.

---

[4] The Rules of the Juvenile Court of Shelby County, Tennessee, state that "[a]ny party may, within five (5) days after the hearing before the Magistrate, excluding nonjudicial days, file a request for and be allowed a hearing before the Presiding Judge." Shelby County Rule of Juvenile Court 13.

[5] Ms. Kessler was appointed to hear the case pursuant to Tennessee Code Annotated section 17-2-122 which states, in relevant part:

> where a judge finds it necessary to be absent from holding court and appoints as a substitute judge an officer of the judicial system under the judge's supervision whose duty it is to perform judicial functions, such as a juvenile magistrate, a child support magistrate or clerk and master, who is a licensed attorney in good standing with the Tennessee supreme court. The judicial officer shall only serve as special judge in matters related to their duties as judicial officer.

Tenn. Code Ann. § 17-2-122(b). No party raises any issue about this authority of the special judge in this case.

2005). A trial court abuses its discretion when it "applies an incorrect legal standard, reaches a decision that is illogical, basis its decision on a clearly erroneous assessment of the evidence, or employs a reasoning that causes an injustice to the complaining party." *Id.* (citing *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood,* 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

DISCUSSION

As a preliminary matter, we must first address Father's argument that the trial court violated his constitutional rights by retroactively applying *Wunder v. Wunder*, M2014-00008-COA-R3-CV, 2014 WL 7332857 (Tenn. Ct. App. 2014) to his 2011 proration of child support. We are cognizant that the trial court heavily relied on *Wunder*, a memorandum opinion, in its order. Indeed, in its conclusions of law, the trial court specifically states that it "adopts the findings in *Wunder v. Wunder*, 2014 7332857." We also recognize the factual similarities between *Wunder* and the case at bar; however, "[w]hen a case is decided by memorandum opinion it shall be designated 'MEMORANDUM OPINION,' shall not be published, and *shall not be cited or relied on for any reason in any unrelated case.*" Tenn. R. Ct. App 10 (emphasis added). Accordingly, we will not rely on *Wunder* as the trial court did in this case, and Father's argument regarding a violation of his constitutional rights and the retroactive application of *Wunder* is pretermitted.

Father next asserts that a parent may unilaterally prorate child support without requesting a modification from the court upon emancipation of the child because (1) a parent has no duty to support a child once he or she has reached the age of majority and (2) proration of child support is not considered a "modification" of a child support award. Respectfully, we disagree. The Child Support Guidelines control this case, and they require Father to seek a modification from the court and establish a significant variance prior to modifying his child support obligation.

"[S]ince 1984, the process and criteria for ascertaining a parent's child support obligation has been governed by Child Support Guidelines promulgated by the Tennessee Department of Human Services in accordance with Tenn. Code Ann. § 35-5-101(e)." *Richardson*, 189 S.W.3d at 724–25. Tennessee Code Annotated section 36-5-101(e) states: "In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines, as provided in this subsection . . . ." Tenn. Code Ann. § 36-5-101(e)(1)(A). "Tennessee's Child Support Guidelines have the force of law." *State ex rel. Williams v. Woods*, 530 S.W.3d 129, 137 (Tenn. Ct. App. 2017) (citing *Jahn v. Jahn*, 932 S.W.2d 939, 943 (Tenn. Ct. App. 1996)). Therefore, courts must use the "child support guidelines 'to promote both efficient child support proceedings and

- 4 -

dependable, consistent child support awards.'" ***Id.*** (citing ***State ex rel. Vaughn v. Kaatrude***, 21 S.W.3d 244, 249 (Tenn. Ct. App. 2000)); *see also* Tenn. Code Ann. § 36-5-101(e); Tenn. Comp. R. & Regs. 1240-02-04-.01(3)(b), (c).

The Tennessee Comp. Rules & Regulations went into effect on January 18, 2005, and provide that

> Beginning on the effective date of these rules, all modifications shall be calculated under the Income Shares Guidelines, whether the action was pending before the effective date or filed after the effective date, where a hearing which results in an order modifying support is held after the effective date of these rules.

Tenn. Comp. R. & Regs. 1240-02-04-.05(1). This Court has explained that "the Tennessee Child Support Guidelines clearly state that the income shares guidelines can apply to actions pending before the effective date, provided that the hearing on the petition to modify is held after the effective date." ***Boyd v. Bates***, No. M2007-02345-COA-R3-CV, 2008 WL 3342998, at *5 (Tenn. Ct. App. Aug. 11, 2008) (noting that the applicability of the income shares guidelines depends on "the date of the hearing that results in an order modifying support" rather than "the date on which the petition to modify is filed."). Therefore, the income shares model may apply to cases pending prior to January 18, 2005, so long as the hearing occurred after that date. *See* Tenn. Comp. R. & Regs. 1240-01-04-.05(1).

The income shares guidelines require a "significant variance" for a modification of a child support order. Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(a) ("Unless a significant variance exists, as defined in this section, a child support order is not eligible for modification."). A significant variance, in other words, acts as a condition precedent for a modification. *See **id.*** Because of the change from the flat percentage model to the income shares model in 2005, the guidelines distinguish between a significant variance for child support orders that were "established or modified before January 18, 2005" and requests to modify orders that were established or modified after the effective date of the guidelines. *See **id.*** In relevant part, regarding orders entered prior to January 18, 2005, the Child Support Guidelines state:

> For all orders that were established or modified before January 18, 2005, under the flat percentage guidelines, and are being modified under the income shares provisions for the first time, a significant variance is defined as:

* * *

- 5 -

> A change in the number of children for whom the ARP is legally responsible and actually supporting

Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(b)(2.). In other words, with regard to orders that were established or modified before January 18, 2005, a change in the number of children for whom a parent is legally responsible and actually supporting qualifies as a significant variance and allows for modification. *See id.* In orders that were established or modified after January 18, 2005, however, a significant variance is defined as "at least a fifteen percent (15%) change between the amount of the current support order (not including the deviation amount) and the amount of the proposed presumptive support order[,]" or if the court determines that the parent seeking modification qualifies as a low-income provider, "at least a seven and one-half percent (7.5% or 0.075) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive order." Tenn. Comp. R. & Regs. 1240-02-04-.05(2)(c). Accordingly, in order to receive a modification under the relevant guidelines, an obligor parent must prove that there is a significant variance under 1240-02-04-.05(2). *See id.* at 1240-02-04-.05(2).

Moreover, the regulations explain that "[a]n order may be modified to reflect a change in the number of children for whom a parent is legally responsible, . . . *only* upon compliance with the significant variance requirement specified in 1240-2-4-.05." Tenn. Comp. R. & Regs. 1240-02-04-.05(6) (emphasis added). Thus, the guidelines make clear that in modifying an order initially entered after January 18, 2005, the requirements of the Child Support Guidelines, including the significant variance requirement, will apply even where the modification results from the emancipation of a child, as the emancipation changes the number of children for whom a parent is legally responsible. The regulations also address child support modifications absent notice to the court stating

> No ordered child support is subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed and notice of the action has been mailed to the last known address of the opposing parties. Any payment or installment of support under any child support order on or after the date it is due is a judgment by operation of law with the full force, effect, and attributes of a judgment, including the ability to be enforced, and is entitled as a judgment to full faith and credit.

*Id.* at 1240-02-04-.05(8). Therefore, according to the regulations, a parent cannot modify child support before a petition for modification is filed in the court and a notice of the action is mailed to the parties. *See id.*

Here, Father relies on several cases that hold that a reduction in child support based upon the emancipation of a child is not a modification and therefore need not be precipitated by the filing of a petition, despite the plain language of the Child Support

Guidelines. We agree that prior to the enactment of these guidelines, courts did not interpret a unilateral reduction in child support based on a child reaching majority as a modification of child support. *See generally **Clinard v. Clinard***, No. 01-S-01-9502-CV00021, 1995 WL 563858, at \*2 (Tenn. Sept. 25, 1995) ("Proration, therefore, is not a retroactive modification of the child support award and its application does not require a petition to, or an order from, the court."). Likewise, following the adoption of the income shares model, some courts have allowed unilateral reductions in child support based upon emancipation, relying on the authority in *Clinard*.[6] ***Corder v. Corder***, 231 S.W.3d 346, 359 (Tenn. Ct. App. 2006) ("There is authority to support the claim that proration of a child support obligation without a court order, based on the child's emancipation, is not a retroactive modification of the child support award. . . . [A]n obligor parent may, under appropriate circumstances, prorate his or her child support payments after a child is emancipated without first obtaining a court order, although it is prudent to request that the trial court modify the child support obligation." (citations omitted)); ***Peterson v. Peterson***, No. M2008-006310-COA-R3-CV, 2009 WL 4041632, at \*4 (Tenn. Ct. App. Nov. 20, 2009) ("[P]roration of the child support based on the emancipation of one of the children covered under the order does not constitute improper retroactive modification.") (citing ***Clinard***, 1995 WL 563858, at \*2). These cases either were decided prior to the implementation of the income shares model, *see **Clinard***, 1995 WL 563858, at \*2, or involve modification of a pre-January 18, 2005 child support order, in which case the emancipation of a child, alone, was sufficient to show the significant variance necessary for the modification of child support. *See* Tenn. Comp. R. & Regs.1240-02-04-.05(2)(b); ***Corder***, 231 S.W.3d at 349 (involving modification of a 1999 child support order); ***Peterson***, 2009 WL 4041632, at \*1 (involving modification of a 1996 final divorce decree that ordered father to pay child support).[7] As such, these decisions provide little guidance in this case, where the parties are seeking to modify a child support order entered well after January 18, 2005.[8] Indeed, from our research, no case involving modification of a child support order entered following January 18, 2005, has relied on ***Clinard*** or its progeny to hold that unilateral proration of a child support order on the basis of the emancipation of a child was proper. *See, e.g., **Mitchell v. Hall***, No. E2014-01919-COA-R3-CV, 2016 WL 749560, at \*6 (Tenn. Ct. App. Feb. 26, 2016) (citing ***Clinard*** as relevant to modification of a 2008 child support order, but not involving unilateral modification of child support); ***Blankenship v. Cox***, No. M2013-00807-COA-

---

[6] Although ***Clinard*** was decided by the Tennessee Supreme Court, it is an unreported case which "shall be considered persuasive authority[,]" and is "controlling authority between [only] the parties to the case[.]" Tenn. Sup. Ct. R. 4.

[7] Although the income shares child support guidelines appear to be applicable in both ***Corder*** and ***Peterson*** as both involved post-January 2005 final hearings, the regulation at issue is not specifically cited in either case. *See **Corder***, 231 S.W.3d at 350 (discussing a June 2005 hearing); ***Peterson***, 2009 WL 4041632, at \*2–\*3 (involving a 2006 or 2007 special master hearing, as well as an October 2007 hearing on the special master's report).

[8] Here, the parties were divorced in January 2006 and a parenting plan establishing child support was entered in May of that year.

R3-CV, 2014 WL 1572706, at *8 (Tenn. Ct. App. Apr. 17, 2014) (holding, in response to Father's argument that modification of his child support obligation should begin on the date of the child's emancipation, rather than the date the modification petition was filed, that Father chose to voluntarily support the child following his emancipation); *c.f. Devore v. Devore*, No. E2010-02017-COA-R3-CV, 2012 WL 11266, at *5 (Tenn. Ct. App. Jan. 4, 2012) (citing **Corder** as support for unilateral proration, but holding that once the child "reached the age of majority and graduated from high school, Husband was entitled **to request** a modification of his [1998] child support obligation to reflect payments for one child instead of two") (emphasis added).[9] Rather, this court has previously held that the adoption of the income shares model has rendered proration "obsolete." **Brooks v. Brooks**, No. M2007-00351-COA-R3-CV, 2009 WL 928283, at *7 (Tenn. Ct. App. Apr. 6, 2009) (citing **Lichtenwalter v. Lichtenwalter**, No. M2003-03115-COA-R3-CV, 2006 WL 236945, at *1 (Tenn. Ct. App. Jan. 30, 2006), *rev'd on other grounds*, 229 S.W.3d 690 (Tenn. 2007)).

Applying the unambiguous Child Support Guidelines applicable in this case, it is clear that Father was not entitled to unilaterally modify his child support obligation upon the emancipation of his eldest child. Rather, the Child Support Guidelines applicable in this case provide that even where a reduction in child support is based upon the emancipation of a child, i.e., "a change in the number of children for whom a parent is legally responsible," two requirements must be met: (1) the parent seeking the modification must file a petition and provide notice to the opposing parent; and (2) the party seeking the reduction must show that a significant variance exists to warrant modification. Here, Father never requested permission from the court to modify his child support obligation. *See* Tenn. Comp. R. & Regs. 1240-02-04-.05(8). To the contrary, the only pleadings filed by Father were filed in response to Mother's request for an arrearage judgment. Consequently, Father failed to file any petition or take any action for modification in court. *See id.* Because Father never sought any relief from the court, no notice was given to Mother. *See id.* Additionally, because no petition was filed, Father failed to establish that a significant variance existed to warrant modification of his child support obligation. *See id.* at 1240-02-04-.05(2)(c), 1240-02-04-.05(6). In fact, Father failed to present any evidence that his child support as calculated under the income shares model would have been reduced in any fashion due to the change in number of children for whom Father was legally responsible. As a result, Father was not in compliance with the controlling income shares guidelines and acted without authority in prorating his child support obligation upon emancipation of his oldest child.

As a final point, Father argued at oral argument that regardless of whether he could unilaterally modify his child support obligation without filing a modification petition, this Court should remand this issue to the trial court to calculate his child

---

[9] Devore also involved modification of a 1998 child support order. *See* **Devore**, 2012 WL 11266, at *1.

support payment in light of his oldest child emancipating. "Judgments awarded outside of the scope of the requested relief are typically void." ***Long v. Long,*** No. M2015-00592-COA-R3-CV, 2015 WL 9584393, at *4 (Tenn. Ct. App. Dec. 29, 2015). Further, "[a] trial court commits error when it bases a decision, even in part, upon conclusions concerning an issue that was not raised in the pleadings or tried by consent." ***Id.*** Father has failed to file a petition to modify his child support obligation at any time during the pendency of this case and has failed to present evidence of a significant variance, both of which are required by the income shares guidelines in order to receive a modification. Because Father has failed to comply with the Child Support Guidelines, which are mandatory in order to receive a modification, he has failed to properly request any relief that could result in a court's modification of his child support obligation. Accordingly, this Court lacks the authority to remand for a determination of Father's child support arrearage. *See* Tenn. Comp. R. & Regs. 1240-02-04-.05(8) ("Any payment or installment of support under any child support order on or after the date it is due is a judgment by the operation of law with the full force, effect, and attributes of a judgment, including the ability to be enforced, and is entitled as a judgment to full faith and credit.").

In conclusion, the current Child Support Guidelines control this case, and Father's reliance on the line of cases applying ***Clinard***, rather than the income shares guidelines, is ultimately misplaced and incorrect. Moreover, Father failed to comply with any of the modification requirements stated in the income shares guidelines. Therefore, we agree with the trial court's reasoning that "[Father] unilaterally and impermissible reduced his child support obligation by 50% when [his oldest child] emancipated in June 2011, instead of following the Child Support Guidelines for setting or modifying child support." The trial court's judgment is therefore affirmed.

## Conclusion

The judgment of the Shelby County Juvenile Court is affirmed. The costs of this appeal are taxed to Appellant, Randall Nelson Songstad, and his surety, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE