# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 22, 2014 Session

## CARL SCOTT BLANKENSHIP v. AMY LYNN COX

**Appeal from the Chancery Court for Williamson County**
**No. II-26488      Michael Binkley, Judge**

---

**No. M2013-00807-COA-R3-CV - Filed April 17, 2014**

---

This appeals arises from the post-divorce modification of child support following the emancipation of the parties' oldest of three children. Both parents appeal numerous rulings by the trial court including its child support calculations, a judgment against Mother arising from Father's overpayment of child support following the emancipation of their oldest child, the imputation of income to Mother for voluntary unemployment, an upward deviation for extraordinary education expenses, allocation of the uncovered medical expenses, allocation of the tax exemptions for the two minors, and attorney's fees. We have determined that although the trial court was justified in finding a deviation for extraordinary education expenses, the trial court erred by applying the deviation prospectively rather than retroactively to the date of the petition. We reverse the trial court only on this issue and remand for the trial court to recalculate the amount of child support and the judgment against Mother consistent with this finding. We affirm the trial court in all other respects and deny both parties' request to recover attorneys' fees incurred in this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed in Part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Rebecca E. Byrd, Franklin, Tennessee, for the appellant, Amy Lynn Cox.

Virginia Lee Story, Franklin, Tennessee, for the appellee, Carl Scott Blankenship.

## OPINION

Amy Lynn Cox ("Mother") and Carl Scott Blankenship ("Father") are both highly educated; Father is an anesthesiologist, and Mother has a bachelor's degree in secondary

education as well as a master's degree. During the marriage, Mother worked in the home and, by agreement of the parties, she home-schooled their children until they entered high school.

The parties divorced on May 17, 2000, and Mother was granted custody of their four minor children. Since the divorce, the parties have experienced numerous conflicts regarding the children and child support, some of which were resolved with the entry of agreed orders and others involved court hearings. Unfortunately for this court, with the exception of the final order challenged in this appeal, all of the prior orders pertaining to child support, including the final divorce decree and interim child support orders, are conspicuously absent from the record. Therefore, we rely on the trial court's recitation of historical facts and events and its findings to provide a recitation of the facts and procedural history relevant to this appeal.

Pursuant to the 2000 final decree, Father's monthly child support obligation, was set at $3,551; however, the record is silent as to the parties' respective income at that time or the allotment of parenting time. We do know, however, that support was based on the parties having four minor children at the time and that Mother was given primary custody of all four children with full decision-making authority

In August 2002, child support for the parties four minor children was modified by agreement and increased to $4,618.

In 2003, Father petitioned to modify the parenting plan. While the petition was pending, Father voluntarily terminated his parental rights to one of the two oldest children.[1] Thereafter, Father's child support obligation was limited to three minor children, Peter, Luke and Ellie. The parties also agreed at that time to reduce Father's monthly child support to $4,230, beginning February 1, 2004, and to divide uninsured medical expenses equally. The allocation of the tax exemptions for three children were decided by the court; the oldest child was allocated to Mother and the two younger children to Father.

In 2005, the parties again squabbled over Father's child support obligation. With the assistance of a mediator, they entered an agreed order on May 19, 2006, which effectively maintained the status quo as established in the prior order.

Peter graduated from high school in June 2010, leaving only two minor children to support; nevertheless, Father continued paying child support of $4,230 per month pursuant to the prior order. Moreover, on each check, Father wrote the comment that the child support payment was for "Peter, Luke and Ellie" even though Peter had graduated from high school.

---

[1] With Mother's consent, her husband adopted that child.

Later in 2010, Father lost his job and remained unemployed for six months. Then, on February 28, 2011, Father filed a Petition for Modification of Child Support which gave rise to this appeal. Father alleged his income had decreased by more than the fifteen percent variance and asked that support be modified in accordance with the child support guidelines for two minor children. He asked that his "child support obligation be modified based upon the child support guidelines retroactive to the date of filing" of his petition and requested attorney's fees.

Mother answered and counter-petitioned on April 25, 2011, contending *inter alia* that there was no significant variance in Father's support obligation justifying a decrease in support and that a reduction would cause financial hardship; however, if modification were granted, she asserted the court should incorporate extraordinary educational expenses (private school tuition), provide Mother the right to claim tax deductions for both children, and order Father to pay his share of medical expenses. Mother also sought attorney's fees.

Father answered this counter-petition and filed his own counter-petition, asking the court to impute income to Mother as she was voluntarily unemployed. Father agreed to accept responsibility for a share of medical expenses with the caveat that he should not be liable for medical care for which he was not consulted. Finally, Father asserted he was entitled to reimbursement for overpayments incurred in paying support for Peter after he graduated from high school in June 2010.

Acting unilaterally, Father reduced his child support payment to $1,910 effective September 1, 2012, believing this was the correct amount for two children. On September 6, 2012, Mother filed an amended counter-petition and sought a restraining order to terminate Father's visitation and restrain him from contacting the children. The court granted the temporary restraining order the following day. Father filed an answer and denied Mother's new allegations; he also filed a motion to dissolve the restraining order.

On September 25, 2012, Mother filed a motion to compel Father to pay child support of $4,230 as required by the order of support in effect as well as "substantial" out-of-pocket expenses she had incurred for mental health treatment and therapy for the minor children. Father responded by arguing that Peter's emancipation triggered an automatic adjustment of support retroactive to June 2010.

Following an October 2, 2012 hearing, the trial court temporarily reduced Father's child support obligation to $3,200 per month. The court denied Father's request to dissolve the restraining order; the court also bifurcated Mother's allegations with respect to visitation into a separate trial. The court additionally set the motion to compel child support, Father's petition to modify support, and Mother's counter-petition for final hearing.

The trial commenced on October 30, 2012, and continued for two more days, November 27 and December 11, 2012. Both parties testified and exhibits were admitted into evidence that included Mother's accounting of educational and medical expenses and copies of Father's child support checks, Father's income tax documentation for 2011, and Father's paycheck "stubs" for 2012. Father submitted a child support worksheet as an exhibit; Mother did not. Father further offered testimony regarding Mother's education and asserted she was able-bodied and capable of employment. Mother testified she was unable to work as she was continuing to home-school the youngest child who was not old enough to attend high school; she also said she would need to be available full-time for Luke, who was in high school, due to his recent emotional issues.

On the last day of trial, December 11, 2012, the parties stipulated that Father's gross monthly income for the child support worksheet was $19,685.71.

A detailed thirty-six page memorandum opinion and order was entered on January 24, 2013. Both parties subsequently filed motions to alter or amend which were heard on February 25, 2013; a final order was subsequently entered. Although the trial court found that Father failed to prove a significant variance based on a decrease in his income,[2] the court found that Father was entitled to a modification of child support by operation of law due to Peter graduating from high school and having turned 18 in 2010; nevertheless, the court limited the retroactive application of the modification to February 28, 2011, the filing of Father's petition to modify.

The trial court concluded that Mother was voluntarily unemployed and, in calculating the basic child support order, the court imputed income to her of $2,475 per month. Child support worksheets were prepared by the court and attached to the memorandum opinion utilizing Father's gross monthly income of $19,685.71 and Mother's of $2,475. Mother's percentage share of income was calculated to be ten percent and Father's was ninety percent. The presumptive amount of child support was then calculated pursuant to the guidelines.

The trial court also found that Mother had proven extraordinary educational expenses due to the children attending private school. Accordingly, two child support worksheets were completed and attached to the memorandum opinion, one with and one without an upward deviation. Although Luke was in private school when Father's petition to modify support was filed, Father's child support obligation from February 28, 2011 (the date the petition to modify was filed) through July 31, 2013, was modified to $2,149 per month based on the worksheet with no educational deviation; thus, the upward deviation for extraordinary educational expenses was not made retroactive.

---

[2]Father does not appeal this decision.

The alternate worksheet, which included the upward deviation for extraordinary educational expenses, projected expenses for private school for Luke and Ellie in the amount of $1,749.83. Mother's share was $192.48, and Father's share was $1,557.35. The trial court chose not to retroactively apply any of the upward deviation to the filing of Father's petition; instead, the upward deviation was prospective only, and Father's child support obligation was set at $3,706.35 for the time frame from August 1, 2013 to May 1, 2014, when Luke and Ellie were both in private school.

Noting that Luke, the older of the two children, would graduate from high school in May 2014, the trial court ordered that Father's child support would be reduced at that time to reflect that Ellie was the only remaining minor child. The court also divided the two remaining tax exemptions by allocating one to each parent.

Two years passed from the filing of the petition to modify child support on February 28, 2011, until the entry of the final judgment; thus, due to the passage of time a substantial overpayment of support by Father occurred for which he was entitled to a judgment. The trial court calculated the overpayment and awarded Father a judgment in the amount of $41,683, and ordered Mother to reimburse Father in 51 monthly payments of $913.66, beginning February 1, 2013, which was based on interest at the rate of 5.25 percent interest.[3] The trial court denied both parties' requests for attorney's fees. This appeal followed.

## ANALYSIS

Each party raises numerous issues on appeal. Mother's issues pertain to the amount of support Father was ordered to pay and the retroactive application of the modification of his support obligation; the assessment of interest of 5.25 percent on the judgment for overpaid support; allowing Father to amend his pleadings to allege that Mother was voluntarily unemployed; finding she was voluntary unemployed and imputing income to her; holding her liable for one-half of uncovered medical expenses; failing to allocate to her the tax exemptions for both minor children; finding that the upward deviation for private school expenses should begin prospectively rather than retroactively to the petition; and denying her attorney's fees.

Father asserts the trial court erred by failing to make the modification of child support retroactive to 2010 when Peter was emancipated; ordering him to pay for private school expenses as an upward deviation to support; modifying the allocation of the tax exemptions by giving Mother one of the tax exemptions where he had previously been awarded both exemptions; and denying his request for attorney's fees.

_____

[3]The aggregate judgment, including interest, was $46,596.

## I. Mother's Voluntary Unemployment

### A. Father's Amendment of the Pleadings

Mother contends the trial court erred by allowing Father to orally amend his pleadings to allege willful or voluntary unemployment. We have concluded that Mother was on notice that Father had pled voluntary unemployment; thus, we find no error in trying this issue along with the other issues concerning child support.

This matter involved a series of amended pleadings which began with Father's initial petition to modify child support, wherein Father alleged a significant variance in income and asked that his support be modified for Luke and Ellie and to omit Peter who was emancipated. Mother timely answered and filed a counter-petition to which Father responded in kind. None of these pleadings raise Mother's willful or voluntary unemployment or underemployment. Mother later filed her Amended Counter-Petition for Suspension or Termination of Father's Visitation and for Restraining Order on September 6, 2012. Father answered and counter-petitioned for custody on September 28, 2012. It was in this pleading that Father unequivocally alleged Mother was voluntarily unemployed or underemployed. He stated:

> If Mother feels that the children's financial needs are not being met then she needs to obtain a job. The parties were divorced twelve (12) years ago and Mother has yet to [have] contributed to any financial support for the children. Child support belongs to the children and is mandated in the State of Tennessee to be in compliance with the guidelines. The Court should impute income to Mother as she is able-bodied and capable of providing financial support for her children.

At trial, Mother objected to all questions concerning her employment, asserting it had not been properly raised by the pleadings. The trial court overruled her objections and stated in its memorandum order:

> Here, Mother was on notice that Father would be arguing underemployment. In the questions presented to Mother during discovery, her employment was questioned, her expenses were questioned, and she was presented with child support worksheets imputing her income based upon the guidelines for a female. In Mother's pleadings, she acknowledged that this issue was for the Court to determine.

Tennessee follows a liberal notice pleading standard under Tennessee Rule of Civil Procedure 8 which "recognizes that the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). A trial court's decision to grant or deny a party's request to amend its pleadings is discretionary. *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 374 (Tenn. 2007). We will not reverse this determination absent an abuse of discretion. *Id*.

For the foregoing reasons, we find no error with the trial court's decision to try the issue of Mother's unemployment.

## B. IMPUTED INCOME TO MOTHER

Mother also contends the trial court erred by finding that she was voluntarily unemployed and by imputing income to her of $2,475 per month. Specifically, Mother contends she was unable to work as she was home-schooling the children and she would need to be available for Luke in the future due to recent emotional issues.

The child support guidelines provide, in relevant part, that gross income may be imputed to a parent in certain situations, including when the "parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. 1240- 02-04-.04(3)(a)(2)(i)(I). While the guidelines stress the importance of the role of a stay-at-home parent such as Mother, they do not prohibit imputing income to that parent under appropriate circumstances. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iii). The guidelines also state that we should "not presume that any parent is willfully and/or voluntarily under or unemployed." Tenn. Comp. R. & Regs. 1240- 02-04-.04(3)(a)(2)(ii).

The determination of whether a parent is voluntarily underemployed or unemployed is a question of fact which "require[s] careful consideration of all the attendant circumstances." *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005) (citing *Eldridge v. Eldridge*, 137 S.W.3d 1, 21 (Tenn. Ct. App. 2002); *Willis v. Willis*, 62 S.W.3d 735, 738-39 (Tenn. Ct. App.2001)). Such a determination "may be based on any intentional choice or act that adversely affects a parent's income." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii)(I). The trial court is afforded considerable discretion in determining this issue, *Richardson*, 189 S.W.3d at 726 (citing *Willis*, 62 S.W.3d at 738); however, as with any other finding, a finding of willful or voluntary underemployment or unemployment must be supported by evidence in the record. *Eatherly v. Eatherly*, No. M2000-00886-COA-R3-CV, 2001 WL 468665, at *11 (Tenn. Ct. App. May 4, 2001).

When a trial court is asked to evaluate whether a parent is willfully or voluntarily unemployed, the court considers the parent's past and present employment, their education, training, and ability to work, and the reasons for their change in employment. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii) and (iii); *Richardson*, 189 S.W.3d at 726. "If a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find them to be willfully and voluntarily underemployed." *Richardson*, 189 S.W.3d at 726 (citing *Willis,* 62 S.W.3d at 738). Moreover, the State of Tennessee gives deference to and recognizes the valuable role of a stay-at-home parent in a child's life. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iii)(III). Relevant factors the court weighs in deciding whether to impute income to a stay-at-home parent include whether the parent acted in the role of full-time caretaker while the parents were living in the same household, the length of time the parent staying at home has remained out of the workforce for this purpose, and the age of the minor children. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iii)(III). The court may also consider any additional factors deemed relevant under the particular circumstances of the case. Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iii)(VII).

In its determination that Mother was voluntarily unemployed, the trial court made the following findings:

> The parties in this matter were divorced in May of 2000. As of 2012 [the time of trial], two (2) of the children are twenty (20) years old, one (1) child is in high school, and one (1) child will be in high school in the fall of 2013. As such, there is no reason why Mother cannot be employed outside the home and earn income to help support the children. At the hearing, the proof showed that Mother is in good physical condition and has a Bachelor's Degree in Secondary Education with a double major in Math and Spanish.

The record reveals that the parties agreed during their marriage that Mother would home-school the children until high school; this practice was followed before and after the divorce. At trial, both parents acknowledged the youngest child, Ellie, would complete her home-schooling in the summer of 2013 and enter private school that fall. Thus, as of September 2013, both Luke and Ellie would be in high school.

Mother has a bachelor's degree in secondary education with a double major in math and Spanish, she taught all of her children at home with excellent results, and she was healthy and otherwise capable of working. Although Mother testified the two minor children may occasionally need her during the school day for various reasons, particularly Luke who had been experiencing emotional issues, she failed to explain why she could not obtain some

form of employment, one that provides the flexibility she may need.[4] Moreover, Mother acknowledged she had not sought employment nor attempted to tutor any other children in the past five years and that she had no plans to do so in the foreseeable future.

Considering the record presented, and with full recognition that the trial court is to be afforded considerable discretion in determining this issue, *see Richardson*, 189 S.W.3d at 726; *Willis*, 62 S.W.3d at 738, we are unable to conclude that the trial court erred in finding that Mother will be voluntarily unemployed as of September 2013 when no children are being home-schooled.[5] Accordingly, we affirm on this issue.

## II. MODIFICATION OF CHILD SUPPORT

Mother raises several other issues concerning the modification of child support. We shall discuss them in turn.

Prior to the adoption of the child support guidelines in 1984, the trial court had wide discretion in matters relating to child custody and support, which was guided only by broad equitable principles. *Richardson*, 189 S.W.3d at 725. With the adoption of the child support guidelines, the trial court's discretion was limited and decisions regarding child support must now be made within the strictures of the child support guidelines. *Id.* The amount of support derived from a proper application of the guidelines is the presumptive amount of child support owed; however, the presumptive amount of support is rebuttable. *Id.* Accordingly, the trial court may deviate from the amount of support required by the guidelines, but when

---

[4]Mother testified that it was not possible for her to work outside the home because:

[Since the summer of 2012,] I'm on call for him just constantly. There's been often times he'll call from school, say, "I'm sad, mom. Will you come get me?" I've had many meetings with his teachers. I've had to come get him at work because he can't finish out. I have to make appointments with psychiatrists and psychologists, research - medication they're wanting me to research, look into eating disorder clinics, and there's just - it's just a new world for me to take care of [him].

[5]It is important to note that Mother was not willfully unemployed at the time of the hearing and she would not be willfully unemployed prior to the summer of 2013. As the following analysis reveals, the trial court modified child support due to Peter's emancipation and set support pursuant to the guidelines based on the income shares of the parents and there being only two minor children instead of three. The court made the modification retroactive to the filing of Father's petition in February 2011. Although the court imputed income to Mother, which was included in the income shares formula for the period beginning September 2013, the court made the imputation of income prospective, beginning September 2013, not retroactive, because Mother would continue home schooling the youngest child through the summer of 2013.

it does, the court must make specific written findings regarding how the application of the guidelines would be unjust or inappropriate. *Id.*

Although setting child support is still a discretionary matter, *see State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000), that discretion is bounded on all sides by the child support guidelines. *Smith v. Darmohray*, No. M2003-00236-COA- R3-JV, 2004 WL 904095, at *4 (Tenn. Ct. App. Apr. 27, 2004) (citing *Butler v. Butler*, 680 S.W.2d 467 (Tenn. Ct. App. 1984)). We review the record de novo with a presumption that the court's factual findings are correct, absent a showing that the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *see Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000). To the extent the trial court exercises its discretion to set child support, we review such decisions pursuant to the deferential "abuse of discretion" standard. *Richardson*, 189 S.W.3d at 725. "A trial court will be found to have 'abused its discretion' when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.*

### A. RETROACTIVE MODIFICATION

Due to Peter's graduation from high school and turning 18 years of age in 2010, the trial court granted Father's petition to modify his child support obligation, and (except for an upward deviation for extraordinary educational expenses) made the modification retroactive to the filing of Father's petition in February 2011.

Father contends the court erred in failing to make the modification retroactive to Peter's graduation in May of 2010 rather than February 2011 when his petition to modify was filed. Mother contends the modification should have been prospective only, not retroactive.[6]

Although Peter had turned 18 and graduated from high school in May 2010, Father continued to remit child support payments in the same amount as before, $4,230 per month, the amount set in an agreed order in 2006 following a successful mediation. Moreover, Father included the notation on each monthly payment that the child support he was paying was additionally "for Peter." On February 28, 2011, eight months thereafter, Father filed a petition to modify his child support obligation so that it would be calculated based on two minor children, not three, and that the modification be retroactive to May 2010 when Peter graduated.

---

[6]Alternatively, if the modification is to be retroactive instead of prospective, Mother contends the court erred in failing to make the upward deviation for extraordinary educational expenses retroactive. We discuss Mother's alternative issue later in this opinion.

A parent is obligated to provide support for children only until they turn eighteen years old or graduate from high school, whichever occurs later. *Corder v. Corder*, 231 S.W.3d 346, 356 (Tenn. Ct. App. 2006) (citing *Kesser v. Kesser*, 201 S.W.3d 636, 642 (Tenn. 2006); *Hopkins v. Hopkins*, 152 S.W.3d 447, 449 (Tenn. 2004)). This is based on Tennessee Code Annotated § 34-1-102, which states:

> (a) Parents are the joint natural guardians of their minor children, and are equally and jointly charged with their care, nurture, welfare, education and support and also with the care, management and expenditure of their estates.
>
> ***
>
> (b) Parents shall continue to be responsible for the support of each child for whom they are responsible after the child reaches eighteen (18) years of age if the child is in high school. The duty of support shall continue until the child graduates from high school or the class of which the child is a member when the child attains eighteen (18) years of age graduates, whichever occurs first.

As a general rule, a parent has no legal obligation to support an adult child; commensurately, the trial court is not empowered to require the parent to support an adult child once emancipated. *Corder*, 231 S.W.3d at 356; *Reeder v. Reeder*, 375 S.W.3d 268, 277 (Tenn. Ct. App. 2012). Therefore, subject to some limited exceptions, the court's authority to require a parent to pay child support ends when the child reaches his or her eighteenth birthday and/or graduates from high school; however, a parent may agree to support a child thereafter. *See Hawkins v. Hawkins*, 797 S.W.2d 897, 898 (Tenn. Ct. App. 1990) (stating that a parent may contract to provide support beyond emancipation, but the contractual obligation is beyond the legal duty of support during minority); *see also Mace v. Mace*, No. W2001-00574-COA-R3-CV, 2002 WL 818223, at * 2 (Tenn. Ct. App. Apr. 15, 2002) (citing *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975) (stating that a child support obligation in excess of that which is legally mandated remains "contractual" in nature even though it is incorporated into the final divorce decree). These exceptions typically pertain to agreements to be liable for certain expenses and other financial obligations post-emancipation. *See id.*

The record reveals the express intent of Father to voluntarily support Peter after his graduation in 2010. This is supported by Mother's testimony that Father agreed to continue paying support at the previously established amount provided that Mother use the extra funds for Peter's college expenses, and that she obtained a loan to pay Peter's tuition and was using the extra support to pay the student loan. More convincing proof of Father's express intent to support Peter beyond graduation is that each check Father wrote thereafter included the notation on the check that the support payment was for "Peter, Luke, and Ellie."

For the foregoing reasons, we find no error with the trial court's decision to limit the retroactive application of the modified support to the filing of Father's petition; to do otherwise would produce an inequitable result.

## B. UPWARD DEVIATION FOR EXTRAORDINARY EDUCATIONAL EXPENSES

We next turn our attention to the trial court's determinations that a deviation from the guidelines was appropriate due to the private education expenses for Luke and Ellie, and when the deviation goes into effect.

The trial court granted an upward deviation for their private school expenses, which deviation would go into effect in September 2013. Father contends any upward deviation was error. Mother agrees with the amount of the upward deviation but contends the court erred in not making it retroactive to February 2011 when Father's reduced child support went into effect.

### 1. Whether a deviation was appropriate?

At trial, Mother introduced an exhibit of an accounting of educational expenses for Luke and Ellie for the 2010-11, 2011-12, and 2012-13 school years, as well as an itemization of projected private school expenses for the two children for 2013 to 2014. The projected expenses for the next school year totaled $1,749.83 monthly for both children. The trial court utilized these projected expenses in calculating the upward deviation of support in the child support worksheets.

The trial court is required to apply the child support guidelines as a rebuttable presumption. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-02- 04- .07(1)(a). However, a court may order a deviation from the amount of support if the deviation complies with the requirements of the child support guidelines and "[t]he amount or method of such deviation is within the discretion of the tribunal." Tenn. Comp. R. & Regs. 1240-02- 04-.07(1)(b). In doing so, the trial court is required to "state in its order the basis for the deviation and the amount the child support order would have been without the deviation." *Id*. "In deviating from the guidelines, primary consideration must be given to the best interest of the child for whom support under these guidelines is being determined." *Id*.

When making a determination regarding a request for deviation, the guidelines direct that the court:

> [S]hall consider all available income of the parents as defined by this chapter
> and shall make a written finding that an amount of child support other than the

-12-

amount calculated under the guidelines is reasonably necessary to provide for the needs of the minor child or children for whom support is being determined in the case immediately under consideration.

Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(a)(1). Furthermore, when ordering a deviation from the presumptive amount of child support established by the guidelines, the trial court is required to set forth written findings of fact for the deviation, the amount of child support that would have been required under the guidelines if the presumptive amount had not been rebutted, how the court determined that applying the guidelines would be unjust or inappropriate, and that the best interests of the children will be served by the deviation. Tenn. Comp. R. & Regs. 1240-02-04-.07(1)(c).

The guidelines specifically recognize, under the facts of a particular case, that certain extraordinary expenses, such as educational expenses, may prompt the court to deviate from the standard child support amounts. Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(d).

Extraordinary expenses are in excess of these average amounts and are highly variable among families. For these reasons, extraordinary expenses are considered on a case-by-case basis in the calculation of support and are added to the basic support award as a deviation so that the actual amount of the expense is considered in the calculation of the final child support order for only those families actually incurring the expense. These expenses may be, but are not required to be, divided between the parents according to each parent's [Percentage of Income].

*Id.*

The guidelines have particular criteria for "Extraordinary Educational Expenses" which may include, but are not limited to, "tuition, room and board, lab fees, books, fees, and other reasonable and necessary expenses associated with special needs education or private elementary and/or secondary schooling that are appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together." Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(d)(1)(i); *In re Andrea A.R.*, No. M2011-00574-COA-R3-JV, 2012 WL 397475, at *6-7 (Tenn. Ct. App. Feb. 7, 2012). If a deviation is allowed for extraordinary educational expenses, "a monthly average of these expenses shall be based on evidence of prior or anticipated expenses and entered on the worksheet in the deviation section." Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(d)(1)(iii). If the court finds private schooling is appropriate, then the trial court is required to calculate the extraordinary education expenses separately and add them to the base child support award. Tenn. Comp. R. & Regs. 1240-02-04-.07(2)(d).

-13-

Following the appropriate protocols, the trial court considered two child support worksheets, both of which were based on the parents' respective income shares, their respective parenting time, and other appropriate criteria. The only difference in the worksheets is that one calculated Father's Final Child Support Order (FCSO) without an educational deviation; the FCSO for that model required Father to pay $2,148.71 a month. The other worksheet calculated Father's FCSO with the educational deviation; his obligation under that model was $3,706.35 a month.[7]

In this case, the trial court expressly referenced and gave appropriate consideration to the applicable guidelines and rendered written findings upon which it determined that a deviation was appropriate. The court found it was the parties' intent prior to the divorce to home school the children until high school, at which time they enrolled in private school, and the parties had the financial means to pay for private school. The record fully supports these findings as well as the other pertinent findings set forth in the memorandum order.[8] Accordingly, we affirm the upward deviation for extraordinary educational expenses.

## 2. Whether the deviation should be retroactive?

The trial court found that a deviation was warranted, but only applied it prospectively, to begin in the fall of 2013 as opposed to February 2011 when the other modification went into effect. Although Mother approves of the amount of the upward deviation, she contends the trial court erred by not making the upward deviation retroactive to the filing of the petition to modify as it did when modifying Father's basic child support obligation. By failing to make the deviation retroactive, Mother contends the amount of the overpayment of child support increased dramatically causing an unjust result. She contends the deviation should have been implemented retroactively to February 28, 2011, the date of Father's petition, thereby decreasing the amount of the judgment. We agree.

At trial, Mother exhibited an accounting of private school expenses for Luke for the 2010-11, 2011-12, and 2012-13 school years; she additionally provided an itemization of projected private school expenses for when both Luke and Ellie are in private school, beginning in the fall of 2013. The trial court expressly found the parties intended prior to the divorce to home school the children until high school, at which time they were enrolled in

---

[7]Mother's pro rata share of the extraordinary educational expense deviation was determined to be $192.48 a month.

[8]The trial court also calculated the upward deviation for the time both children would be in private school, August 1, 2013 through May 1, 2014, until Luke graduates, and directed that support be modified for one child thereafter when Ellie would be the only child in private school.

private school. The trial court further found that Father consented to his older children attending private school, and the parties had the financial means for private school. The trial court felt it would be unjust for Mother to pay for the children's education alone, given their custom and plan for the children's education, and that it was in their best interest to maintain the status quo of their lifestyle. Based on the foregoing, we are unable to distinguish why this reasoning should only be applied as of Ellie's enrollment in high school in 2013 when this rationale likewise supports a retroactive deviation for Luke's private education from February 2011 to September 2013.

For the foregoing reasons, we reverse the trial court on this narrow issue and remand with instructions to make the upward deviation retroactive to the filing of Father's petition to modify, to calculate the amount of the deviation for the period of time that Luke is the only minor child in private school, to calculate the amount of the deviation for the period of time that both Luke and Ellie are in private school, and to recalculate the amount of the judgment for overpayment of child support. We leave intact the court's finding that once Luke graduates, Father's child support obligation will be modified for the reasons stated in the memorandum opinion and order.

### C. Parenting Time Adjustment

In the final memorandum and order in which the trial court calculated child support, the court assigned 60 days of parenting time to Father for the two minor children, Luke and Ellie, and 305 days to Mother.[9] In assigning 60 days of parenting time to Father and 305 days to Mother, the court specifically stated it was "applying the number of days allocated to each parent in the child support worksheet that was submitted as Exhibit 1 to Mother's Post Trial Memorandum." Nevertheless, Mother contends Father should have been allocated no parenting time whatsoever; thus, his child support obligation should be recalculated.

The guidelines provide for an adjustment of child support based upon the actual amount of time each parent spends with the children. Tenn. Comp. R. & Regs. 1240-02-04-.04(7) and 1240-02-04-.05(3). Where a parent spends fewer than sixty-eight days per year or the average of sixty-eight days with all of the children, their child support obligation may be increased for the lack of parenting time. Tenn. Comp. R & Regs. 1240-2-4-.04(7)(i);

---

[9]Father states in his brief that the final divorce decree awarded him parenting time of ninety-four days that included every other weekend beginning Friday at 5:00 p.m. until Sunday at 5:00 p.m., and on Tuesdays during the off week from 5:00 p.m. until 7:30 p.m.; four weeks during the summer; one week at Christmas; four days for Thanksgiving every other year; every other Spring Break; and every Father's Day. The record before us fails to identify the parenting time assigned to Mother and Father. This is because no such orders are contained in this record, neither party admitted evidence of such, and this information is not referenced in the final order on appeal.

*Hommerding v. Hommerding*, No. M2008-00672- COA-R3-CV, 2009 WL 1684681, at *7 (Tenn. Ct. App. June 15, 2009).

Father testified he was working and living in Alabama and admitted he had not been exercising all of his parenting time. Further, instead of insisting on a rigid visitation schedule, he permitted the children to opt out of his parenting time if they had activities or other commitments. He also stated he would travel to Tennessee if the children had special activities or events and stay overnight at a hotel.

Mother testified that Father was not exercising all of his visitation allowed "under the previous orders of the Court," those prior to July 2012. She also stated that during that summer, Luke was reluctant to visit with Father and had also experienced health issues requiring inpatient treatment. While he was hospitalized, he had been inaccessible to Father. It was also undisputed that Father had not been exercising any parenting time since the entry of the restraining order on September 7, 2012, that temporarily suspended his parenting time pending further orders. Father denied the allegations and filed a motion for dissolution of the restraining order.[10]

Although Mother contends that assigning 60 days to Father was error,[11] she submitted a worksheet that listed Father's parenting time at 60 days.[12] Proposed child support worksheets are a mainstay in child support litigation. As we explain below, these worksheets are attached to pleadings, used during testimony, entered as exhibits, and a helpful tool for

---

[10]The trial court ruled on Father's request to dissolve the restraining order on October 10, 2012:

The Court finds that the Temporary Restraining Order issued September 7, 2012, should remain in effect, with a modification to allow either party to file a Motion with the Court in regard to Father's visitation with the minor children. The Court is not making this a blanket order forever and ever. The Court will consider any evidence that may be pertinent regarding whether the Restraining Order should be lifted in whole or in part including any evidence from the children's counselors that such visitation would or would not be recommended but the decision is the Court's to make and not in the sole discretion of the counselors.

[11]Father entered a proposed child support worksheet as an exhibit which allocated eighty-two days of parenting time to him and the remainder to Mother.

[12]Consistent with the other short-comings in this record, we only have a partial proposed child support worksheet prepared by Mother that is attached to a Notice of Filing dated October 2, 2012. This partial worksheet does not denote a proposed parenting time adjustment to the basic child support order. We do not know whether Mother mistakenly filed an incomplete worksheet or submitted a complete worksheet which was omitted from the record; nevertheless, the trial court specifically utilized a worksheet submitted by Mother as an exhibit in a post-trial memorandum to set Father's parenting time at sixty days.

-16-

making findings of fact and conclusions of law. Mother's post-trial submission of a worksheet was the equivalent of submitting proposed findings of fact and conclusions of law, which benefits the parties and the courts.

> Requiring trial courts to make findings of fact and conclusions of law is generally viewed by courts as serving three purposes. First, findings and conclusions facilitate appellate review by affording a reviewing court a clear understanding of the basis of a trial court's decision. Second, findings and conclusions also serve to make definite precisely what is being decided by the case in order to apply the doctrines of estoppel and res judicata in future cases and promote confidence in the trial judge's decision-making. A third function served by the requirement is to evoke care on the part of the trial judge in ascertaining and applying the facts. Indeed, by clearly expressing the reasons for its decision, the trial court may well decrease the likelihood of an appeal.

*Lovlace v. Copley*, 418 S.W.3d 1, 34-35 (Tenn. 2013) (citations omitted).

For the foregoing reasons, we are not swayed by Mother's claim that the trial court erred by using the child support worksheet she submitted post-trial in which she assigned Father sixty days of parenting time to calculate support. Moreover, the evidence does not preponderate against this finding. Therefore, we find no error with the number of parenting days assigned by the trial court.

### III. OVERPAYMENT OF CHILD SUPPORT

The court calculated the overpayment of child support from the filing of Father's petition in February 2011 to the entry of judgment in February 2013 to be $41,683. The court also established a payment plan by which Mother would satisfy the judgment with fifty-one monthly payments of $913.66, inclusive of interest at the rate of 5.25 percent. Mother contends the court erred in calculating the amount of the judgment and in assessing interest of 5.25 percent.

#### A. THE AMOUNT OF THE JUDGMENT

Mother contends the amount of the judgment is erroneously inflated because the modification from three children to two children was made retroactive. Although we affirmed the decision to make the modification based on the guidelines retroactive to the filing of Father's petition in February 2011, we have additionally determined that the upward deviation for Luke's private school expenses should be made retroactive to the filing of Father's petition in February 2011. Accordingly, the amount of the judgment for

overpayment of child support must be modified, and a judgment entered for the amount of the overpayment in accordance with this opinion.

## B. INTEREST

Mother also takes issue with the trial court's decision to assess interest of 5.25 percent. She relies exclusively on Tenn. Code Ann.§ 36-5-101(f)(1) and Tenn. R. & Regs. 1240-02-04-.06(4); however, neither provision relates to overpayment of post-emancipation support.

As we determined earlier, Father was entitled to a judgment for the amount of child support he paid in excess of his obligation. *See e.g. Inzer v. Inzer*, No. M2008-00222-COA-R3-CV, 2009 WL 2263818, at *10-11 (Tenn. Ct. App. July 28, 2009); *Huffman v. Huffman*, No. M2012-01538-COA-R3-CV, 2013 WL 1858798, at *1 (Tenn. Ct. App. May 1, 2013). Once a monetary judgment was entered, the trial court was mandated by Tenn. Code Ann. §§ 47-14-121 and 47-14-122 to set the amount of interest to accrue on the judgment until it is paid. *See Long v. Mattingly*, 817 S.W.2d 325, 330 (Tenn. Ct. App. 1991) (holding that Tenn. Code Ann. §§ 47-14-121 and 47-14-122 mandate interest on judgments). Accordingly, we find no error with the award of interest at 5.25 percent.

## IV. ALLOCATING UNINSURED MEDICAL EXPENSES

The trial court ruled that each parent would be equally responsible for uncovered health expenses and, because Mother was the sole decision-maker with respect to health care, she was ordered to submit an expense statement to Father who was ordered to pay his half within ten days.

On appeal, Mother insists the trial court erred by failing to adjust the basic child support order to include uninsured medical expenses and by failing to allocate these expenses pro rata, ninety percent to Father and ten percent to Mother, rather than maintaining the 50/50 split. As grounds for this position, she maintains that Father has a greater ability to pay these expenses, that for several years Father has failed to pay health insurance premiums for the children, and she further blames Father for substantial emotional harm to the children leading to an increase in out-of-pocket mental health care.

The guidelines provide that the minor children's medical expenses and medical needs which are not covered by insurance are not included in the basic child support schedule; nevertheless, they are the financial responsibility of both parents. Tenn. Comp. R. & Regs. 1240-02-04-.04(8)(d)(1). Pursuant to the guidelines, if the uninsured medical expenses are routinely incurred so that a specific monthly amount can be reasonably established, a specific

-18-

dollar amount shall be added to the basic child support obligation to cover those established expenses and these expenses are to be pro-rated between the parents according to each parent's percentage of income. Tenn. Comp. R. & Regs. 1240-02-04-.04(8)(d)(2). However, in circumstances, as is the case here, where the uninsured medical expenses are not routinely incurred so that a specific monthly amount cannot be reasonably established, then a specific dollar amount shall not be added to the basic child support obligation. Tenn. Comp. R. & Regs. 1240-02-04-.04(8)(d)(3). Instead, as the guidelines instruct, "the court order shall specify that these expenses shall be paid by the parents as incurred according to each parent's percentage of income unless some other division is specifically ordered by the tribunal." *Id.*

The trial court specifically found that the children's uninsured medical expenses were *not routinely incurred* such that a specific amount could be reasonably established and Mother does not dispute the fact that the uninsured medical expenses were nonrecurring. Thus, the court did not err by not adding a specific dollar amount to the basic child support obligation to cover "recurring" medical expenses so they could be pro-rated according to each parent's percentage of income as Tenn. Comp. R. & Regs. 1240-02-04-.04(8)(d)(2) instructs.

Although the record is replete with Mother's general allegations that Father has caused psychological harm to the children, we find this was not substantiated by the testimony or evidence at trial.[13] Additionally, although it is disturbing that Father failed to maintain health insurance for the children in direct contravention to the original decree, allocation of uninsured medical expenses is not the mechanism by which to punish Father for violating a court order. Moreover, Mother and her husband were, most fortunately, able to insure the children under their existing family policy at no additional cost.

For the above reasons, we find no abuse of discretion in assessing liability for the uninsured medical expenses equally.

## V. ALLOCATION OF TAX EXEMPTIONS

Both Mother and Father claim error with respect to the allocation of tax exemptions for the two minor children; each claims they are entitled to both exemptions. We find no error with the trial court's decision to allocate one exemption to each parent.

The following is the procedural history of this issue as summarized in the trial court's January 2013 memorandum order. When the parties initially entered into their final divorce

---

[13]We are not commenting on the merits of this issue, realizing the issue will be tried in a bifurcated evidentiary proceeding; we are merely observing that there was little evidence presented at the initial trial.

decree in 2000, there were four minor children. Pursuant to the decree, Mother and Father each claimed two minor children as tax exemptions. In September 2004, after Father filed a petition to modify the parenting plan and reduce child support, the trial court, *inter alia*, allocated the three remaining tax exemptions as follows: the tax exemption for Peter was allocated to Mother, and the tax exemptions for the two younger children, Luke and Ellie, were allocated to Father.

After Peter was emancipated, which left Father with two exemptions and Mother with no tax exemptions, she asserted in her amended counter-petition a claim for the tax exemptions for Luke and Ellie stating:

> The current child support guidelines presume that the Primary Residential Parent, in this case Mother, receives all tax exemptions for the minor children. The present order splits the tax exemptions for the minor children between the parties. Should this Court modify Father's child support obligation, then Mother should receive all tax exemptions for the minor children.

The "Taxation Assumption" in the schedule assumptions in the guidelines states in pertinent part: "The alternate residential parent will file as a single wage earner claiming one withholding allowance, and the primary residential parent claims the tax exemptions for the child." Tenn. R. & Reg. 1240-02-04-.03(6)(b)(2)(ii). Mother contends Tenn. R. & Reg. 1240-02-04-.03(6)(b)(2) operates as a legal standard and, thus, the trial court erred in failing to allocate both tax exemptions to her. We respectfully disagree noting that our courts have held this "rule" is not obligatory on the trial courts. See Crews v. Staggs, No. M2010-01624-COA-R3-CV, 2011 WL 2848745, at *2 (Tenn. Ct. App. May 31, 2011) (citations omitted). Tenn. R. & Reg. 1240-02-04-.03(6)(b)(2) "simply describes the methodology used to compute spouses' respective net incomes," and it is merely a mathematical assumption with no bearing on the trial court's discretion to award the tax exemptions. *Id*. Accordingly, the rule did not require the allocation of both tax exemptions to Mother; thus, we find no error with the trial court not allocating both tax exemptions to Mother.

Father contends the previous order allocated the tax exemption for both of the younger children to him and there was no basis for the court to deviate from that order. Additionally, Father suggests the trial court was confused and did not recall that he had been allocated both exemptions in the prior order.

The record does not reveal whether the trial court considered the previous orders in which the tax exemption for Peter was allocated to Mother and the exemptions for both of the younger children were assigned to Father. Nevertheless, the record reveals that the exemptions were split equally when there were four minors and this was done by agreement

of the parties, a fact the trial court observed and for which it commented that the parties effectively "split the exemptions in half." The record before us fails to provide a sufficient justification to deviate from the trial court's decision to allocate one exemption to each parent.

Therefore, we affirm the trial court's allocation of the two remaining exemptions.

## VI. ATTORNEYS' FEES

The final issue relates to attorneys' fees both at trial and on appeal. Both Mother and Father contend the trial court erred in denying their attorney's fees and request attorney's fees on appeal.

Tennessee Code Annotated § 36-5-103(c) provides that a party may recover their reasonable and necessary attorney's fees in cases involving child support modification, including fees incurred on appeal. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). The decision on whether to award attorney's fees remains within the discretion of the trial court. *Id.*

"Whether to award attorney's fees on appeal is a matter within the sole discretion of this Court." *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App .1995)). In determining whether an award is appropriate, we take into consideration "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Id.* at *6 (citing *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003)).

Based on the foregoing, we find no error with the trial court's decision to deny attorney's fees for both parties. We further conclude that neither party is entitled to recover their attorney's fees incurred in this appeal.

## IN CONCLUSION

The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. Costs of appeal are assessed against the parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE