# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
May 13, 2014 Session

# DORAH ELIZABETH JOHNSON
**v.**
# JEFFREY WALTER JOHNSON

**Appeal from the Crockett County Chancery Court**
**No. 9233    George R. Ellis, Chancellor**

---

**No. W2013-02248-COA-R3-CV - Filed August 21, 2014**

---

This appeal stems from a divorce proceeding and child support modification. On appeal, the appellant husband challenges several decisions made by the trial court after it had entered an order purporting to be the final decree of divorce. Because prior orders reserved issues not addressed in this divorce decree, we find this divorce decree was not a final order, and thus, subject to revision by later orders. Consequently, we find the trial court had jurisdiction and did not abuse its discretion in later revising awards contained in the non-final divorce decree and affirm the later changes in part. Additionally, in a later order purporting to modify the child support award, we find the trial court failed to properly make findings of facts and conclusions of law in compliance with Rule 52.01 of the Tennessee Rules of Civil Procedure and remand in part on this issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed in Part and Remanded in Part**

PAUL G. SUMMERS, SR. J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

David W. Camp, Jackson, Tennessee, for Defendant/Appellant Jeffrey Walter Johnson

Plaintiff/Appellee Dorah Elizabeth Johnson, self represented[1]

---

[1] Ms. Johnson was represented by counsel throughout the proceedings below but chose to represent herself in this appeal.

## MEMORANDUM OPINION[2]

### FACTS AND PROCEEDINGS BELOW

This appeal stems from a divorce proceeding and involves the sale of a marital residence, an award of attorney fees, and child support modification.

Plaintiff/Appellee Dorah Elizabeth Johnson ("Wife") and Defendant/Appellant Jeffery Walter Johnson ("Husband") married in 1995; two children were born of the marriage. During the marriage, the parties resided in a home located on Cypress Tree Road in Humboldt, Tennessee ("marital residence"). Wife was a self-employed insurance salesperson, and Husband was employed by a school in Jackson, Tennessee.

In the spring of 2009, after 14 years of marriage, both parties filed complaints for divorce. While the divorce was pending, Husband continued to live in the marital residence; Wife lived elsewhere with the parties' children, as she was designated primary residential parent under a temporary parenting plan. Despite being named primary residential parent, Wife was ordered to pay Husband child support under this temporary plan. During this time, Wife also voluntarily paid Husband $1,500 to help pay for expenses, including the mortgage on the marital residence.

In October 2009, Wife filed a motion seeking to sell the marital residence prior to the resolution of divorce proceedings, contending she could no longer afford to support the mortgage on the home.

Prior to a final decree, the trial court held a hearing on the disposition of the marital residence, among other issues. On November 18, 2009, the trial court entered an order granting Wife's request to put the marital residence on the market prior to the final divorce proceeding ("November 2009 Order"). In doing so, the trial court ordered each party to "pay one-half (½) of the mortgage payment until the property is sold." The order went on to state as follows: "When the marital residence is sold, the mortgage shall be paid off in full and any equity

---

[2]**Rule 10. Memorandum Opinion**

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

remaining from the sale of the marital residence shall be placed with the office of the Clerk and Master until final disposition of this matter." At that time, the trial court also ordered the parties to meet with a realtor within two weeks.

In December 2009, the trial court entered another order finding that Husband failed to follow the November 2009 Order regarding the listing and sale of the marital residence and gave Wife "sole authority to engage a licensed realtor and list the home for sale, without Husband's permission or consideration." Husband filed a motion seeking to have this order set aside.

In January 2010, the trial court held a hearing on Husband's motion to set aside; however, an order was not entered until nearly a year later in November 2010 ("November 2010 Order"). In this order, the trial court found that both parties agreed on a realtor and stated that "when an offer is made to purchase the marital home, should the parties not agree upon the offer or cannot agree on a counter offer, then the Court will make the decision."

In the meantime, the trial court held a hearing on the remaining divorce issues in June 2010 and entered a "Final Decree of Absolute Divorce" in March 2011 ("Divorce Decree").[3] In this order, the trial court granted Husband an absolute divorce, adopted the parties' proposed parenting plan, and divided the marital estate "in accordance with Exhibits Two (2) and Eight (8), the parties['] proposed property division worksheets." Though the trial court did not specifically reference the marital home in its order, the proposed property division worksheets reference the marital home, but each provides significantly different values for the home. Despite the differing values, each proposed plan evenly split the home's equity. However, at that time, the marital residence had still not been sold.

With respect to child support, the Divorce Decree merely states as follows: "Child support shall be modified to reflect any change in the income of the parties and the number of days that each party parents the children." No other finding or actions appear to have been taken concerning this issue. Despite being designated the primary residential parent, Wife continued to pay Husband child support each month.

The trial court also awarded "[a]ttorney's fees for [Husband] and the costs will be taxed against [Wife]"; Husband's attorney fees totaled $14,695.77. It also stated that "[a]ll issues not ruled upon are dismissed." The record does not indicate that either party attempted to file an appeal at this time.

Though the trial court's final decree did not reference a method of payment as to the attorney fees, Wife apparently unilaterally began paying Husband $100 per month to satisfy this award.

---

[3] The record does not contain a transcript or statement of evidence detailing what occurred at this hearing.

Meanwhile, Husband continued to live in the unsold marital residence.

In June 2012, almost two years after the final divorce hearing, Wife filed a motion to approve a marketing and sales plan and price reduction schedule, explaining the marital residence had still not been sold. At that time, Wife had been assisting Husband with the mortgage payment, but she could "no longer afford to pay for Defendant to live in the marital residence." At the time, Wife sought to have Husband timely make all mortgage and home equity line of credit payments, taxes, and insurance. Husband responded and filed a counter motion for contempt and sought a modification of the Divorce Decree. Husband contended that Wife's $100 payments toward Husband's award of attorney's fees had been sporadic, and a balance of $13,095.77 remained. He also requested that the final decree of divorce be modified and the attorney fee award be "reduce[d] . . . to judgment." Husband alleged Wife stopped paying her share of the mortgage payment in May 2012 and did not reimburse Husband for maintenance expenses.

The marital residence finally sold in July 2012. Wife paid all closing costs associated with the sale. In October 2012, Wife filed a motion seeking reimbursement for half of these closing costs and for half the cost of necessary repairs she paid for the home's pool. Wife also claimed to have paid the entire July 2012 mortgage payment and a substantial amount toward the residence's home equity line of credit. Husband sought to have this motion dismissed.

Before Wife's motion was heard, in May 2013, Wife also filed a petition to modify child support.[4]

After several continuances, the trial court held a hearing on Wife's motion for reimbursement and her petition to modify child support as well as Husband's motion for contempt and modification of the Divorce Decree. At this hearing, both parties testified.

Wife recounted the many expenses she paid in connection to the sale of the marital residence. Among other things, Wife also testified about her payment of the attorney fee award to Husband since the Divorce Decree. She stated that she started paying Husband $100 per month toward the attorney fee award, but increased to $200 per month, and again, to now paying $300 per month toward the attorney fee award. She submitted a financial affidavit showing a monthly deficiency and explained she could continue paying the $300 per month but she currently "would have a hard time– definitely have a hard time paying what [Husband] has asked her to pay."

---

[4] From our review of the record it is unclear whether or not a prior modification in accordance with the Divorce Decree "to reflect any change in the income of the parties" had been done at that time.

Regarding her own income, Wife testified that her income had gone down since child support was originally set. She submitted several tax returns containing adjusted gross income amounts. She claimed that the child support worksheet she submitted to the trial court was based on her 2012 adjusted gross income, as she was unsure what her 2013 income would be at that time. However, she stated that Husband's income in this worksheet was based on his 2013 income.

Husband also testified about costs he incurred in improving the marital residence for sale. Among other things, he claimed that, for child support purposes, his gross income had increased since 2012-2013 as he recently switched school systems; and he noted that Wife's proposed child support worksheet included estimates of his income that "would only be an assumption."

Upon conclusion of the hearing, on September 19, 2013, the trial court entered an order entitled "Order on Plaintiff's Motion for Reimbursement of Necessary Expenses . . . Complaint to Modify Child Support Obligation and Defendant's Counter-Motion for Contempt and for Modification of the Final Decree of Divorce" ("September 2013 Order"). As it pertained to attorney fees, the trial court denied Husband's request to have the award in the Divorce Decree "reduced to judgment," finding Wife's repayment of the award at $300 per month to be reasonable under the circumstances. However, the trial court noted that if Wife were to miss a $300 payment, the full amount of the award would be due at that time and the award "automatically reduced to judgment."

The trial court also determined that all expenses related to the closing of the home, the mortgage, the home equity line of credit, and other home improvement expenses would be spilt evenly, commenting that all the expenses discussed "quite clearly are costs of selling this house." Thus after calculating the expenses spent on the home by both parties, Husband was found to be indebted to Wife in the amount of $6,649.31, of which Husband was to pay at a rate of $300 per month until paid in full.

Regarding child support, the trial court ordered that Wife's request to modify child support be reserved. The trial court ordered that Wife was to pay Husband for the last few months of child support, as she was in arrears and, once Wife's obligation was current, the parties' attorneys were to "submit their clients' income and related information to Assistant District Attorney Stephanie Hale at the District Attorney General's office within twenty (21) days of the hearing for computation of proper child support." This was apparently done, but the record fails to contain which documents General Hale relied upon or a report detailing her methods or conclusions.

Several weeks later, in October 2013, the trial court entered a subsequent order granting Wife's request to modify her child support obligation based on General Hale's review of the parties' information and proposals ("October 2013 Order").
The trial court's order states in relevant part as follows:

> The Court reserved a ruling on Plaintiff's Complaint to Modify Child Support Obligation, pending review by Assistant District Attorney General Stephanie Hale. Attorney Hale has reviewed the parties' information and proposals and has approved [Wife's former counsel's] Child Support Worksheet. It is hereby ORDERED . . . :
>
>> Plaintiff's request that her child support obligation be modified is granted;
>>
>> Defendant shall pay Plaintiff current child support in the amount of $67.00 per month in accordance with the attached Child Support Worksheet, beginning September 1, 2013.
>>
>> Plaintiff having requested that any relief be retroactive to the date she filed her Complaint, pursuant to statute, is entitled to that relief.
>>
>> Defendant shall reimburse Plaintiff for any child support payments made to him from the months of May, June, July, August, and September 2013.

Thus, based on the new income calculations done by General Hale, Husband was now to pay child support to Wife. From these rulings, Husband appealed.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

Husband raises the following issues on appeal:

> The Trial Court erred in granting a motion for reimbursement of expenses and awarding monies in the sale of the marital residence when there was no subject matter jurisdiction to permit the court to take action.
>
> The Trial Court erred when it failed to reduce attorney fees to judgment.
>
> The Trial Court erred when it failed to determine the amount of child support

-6-

and referred the motion to the Attorney General's office for calculation because the trial court was not capable of making the calculation.

In a bench trial, our review of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***Kendrick v. Shoemake***, 90 S.W.3d 566, 570 (Tenn. 2002); ***Marlow v. Parkinson***, 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); ***Realty Shop v. RR Westminster Holding Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). As to the trial court's legal conclusions, our standard of review is *de novo* on the record, according no deference to the trial court's decision. ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000).

## ANALYSIS

### Sale of the Marital Residence

On appeal, Husband argues that the trial court lacked subject matter jurisdiction to assess half of the costs and expenses associated with the sale of the house to Husband. Husband argues that the Divorce Decree became a final order in April 2011 prior to the sale of the marital home, and Wife cannot now obtain relief for the money she expended to sell the property because the Divorce Decree did not specifically address expenses associated with the sale and "[a]ll issues not ruled upon [were] dismissed."

Husband relies on ***Tandy v. Tandy*** for the proposition that a court would not have jurisdiction to modify property rights after an adjudication of those rights unless a specific reservation of jurisdiction for that purpose had been stated. ***Tandy v. Tandy***, Shelby Law No. 52, 1991 WL 3817 (Tenn. Ct. App. Jan. 18, 1991). Husband cites the following passage from ***Tandy***:

> Although ordinarily a court has no jurisdiction to modify property rights after an adjudication of those rights has been made in the judgment of dissolution of marriage, property rights not adjudicated on dissolution can be determined later when jurisdiction to do so has been reserved; however, this reservation of jurisdiction must be a specific reservation for the purpose of making a later adjudication of property rights. . . .

***Tandy,*** 1991 WL 3817, at *5. Based on this, Husband contends that because the Divorce Decree did not specifically reserve the issue of costs and expenses to be determined at a later date, the trial court erred in later ordering the parties to split these expenses, as it lacked subject matter jurisdiction.

Subject matter jurisdiction implicates a court's power to adjudicate a particular case or controversy. *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 445 (Tenn. 2012); *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). "In the absence of subject matter jurisdiction, a court cannot enter a valid, enforceable order." *McQuade v. McQuade*, No. M2010-00069-COA-R3-CV, 2010 WL 4940386, at *4 (Tenn. Ct. App. Nov. 30, 2010) (citing *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)). "Therefore, subject matter jurisdiction may be raised at any time by the parties or by the appellate court, *sua sponte* on appeal." *McQuade*, 2010 WL 4940386, at *4; *County of Shelby v. City of Memphis*, 365 S.W.2d 291, 292 (Tenn. 1963); *Graham v. Graham*, No. E2008-00180-COA-R3-CV, 2009 WL 167071, at *6 (Tenn. Ct. App. Jan. 26, 2009).

After carefully reviewing the record in this case, we disagree with Husband's proposition that the trial court did not specifically reserve jurisdiction to later adjudicate issues related to the sale of the marital residence. Although this language does not appear in the order entitled "Final Decree for Absolute Divorce," the trial did explicitly reserve the issue of the marital residence in its November 2009 Order granting Wife's motion to sell the marital residence. In this November 2009 Order, the trial court states, "*When the marital residence is sold*, the mortgage shall be paid off in full and *any equity remaining from the sale of the marital residence* shall be placed with the office of the Clerk and Master *until final disposition* of this matter." (Emphasis added).

Although selling the home took far longer than anyone anticipated and it would have been sensible for the trial court to reiterate this reservation more directly in its Divorce Decree, the prior reservation is not voided.[5] Likewise, this fact is also demonstrated by the later

---

[5] As exhibited by the following exchange between Husband's attorney and the trial court at the hearing in August 2013, the trial court reiterated its clear intention that the November 2009 Order dictate how the marital residence was to be divided, even after the issuance of the Divorce Decree:

> The Court: Maybe I need to interject here. . . . But on October 28th in 2009, The Court finds ". . . that the Motion of [Wife] to sell the marital home is well taken and will be granted . . . . The parties are ordered . . . to sell the marital property on condition that, one, each party will pay directly to the mortgage company one-half the mortgage payment until the property is sold. Two, when the property sells, the mortgage payment will be made in full." Did that not make it into an Order?

> Mr. Camp: No, sir. That was temporary. That was the temporary Order because the divorce, Your Honor, was in June of 2010. It did not make it into The Court's Final Decree. . . .

> The Court: Well, this was prior to the divorce being granted.

November 2010 Order, which also referenced this reserved jurisdiction to adjudicate any disputes that potentially arose between the parties when offers were made, whenever that may have been, stating that, "when an offer is made to purchase the marital home, should the parties not agree upon the offer or cannot agree on the counter offer, then the Court will make the decision." This order also notes the trial court's intention to reserve jurisdiction throughout the length of the sale. Based on this, we find that the passage of time did not remove the trial court's jurisdiction to adjudicate all matters raised in the complaint for divorce, including the division, sale, and distribution of the "equity remaining from the sale of the marital residence."

Having determined that the trial court did sufficiently reserve jurisdiction to later adjudicate issues involving the sale of the marital residence, we note the effect that such a reservation has on the finality of the "Final Decree of Absolute Divorce." Husband contends that the Divorce Decree became a final order in April 2011. We disagree.

Though the trial court's terminology indicates to the contrary, the "Final Decree of Absolute Divorce" cannot technically be a final order until all matters between the parties are adjudicated. *Corder v. Corder*, 231 S.W.3d 346, 358 (Tenn. Ct. App. 2006) (finding that an order reserving an issue is not a final order and would not have a res judicata effect) (citing *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459-60 (Tenn. 1995)). "A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). Here, there was clearly more for the trial court to do, as the home had not yet been sold, a value had not been placed on the home, and the equity remained undivided; thus "adjudicat[ing] fewer than all of the

---

Mr. Camp: That's right.

The Court: So that was an Order of this Court for each to pay one-half.

Mr. Camp: Yes, Your Honor. . . .[U]ntil The Court heard the Divorce Decree. And then the Court did not –

The Court: I did not say that. I said until it was sold.

Mr. Camp: Well I'm not disagreeing with Your Honor's interpretation of –

The Court: You know, I think that we're bound by what The Court ordered back in 2009.

Mr. Camp: Okay.

claims, rights, or liabilities of all the parties."[6] *In re Estate of Henderson*, 121 S.W.3d at 645 (citing Tenn. R. App. P. 3(a)). Because this order was not final, it was "subject to revision any time before the entry of a final judgment." *Id.;* Tenn. R. Civ. P. 54.02. In this case, all matters raised in the original complaint for divorce were not fully resolved in this case until the trial court filed the October 2013 Order. Because a final order had not been entered, the matter was still within the bosom of the trial court, and all modifications to the Divorce Decree in the September 2013 order were permissible and within the trial court's discretion. *Wall v. Wall*, No. W2010-01069-COA-R3-CV, 2011 WL 2732269, at *22 (Tenn. Ct. App. July 14, 2011) (finding issues addressed in a non-final order "remain in the bosom of the trial court, and any rulings in the order may be modified at any time before a final order is entered.") (citing *Greer v. Greer*, No. W2009-01587-COA-R3-CV, 2010 WL 3852321, at *6 n. 7 (Tenn. Ct. App. Sept. 30, 2010)); *see also* Tenn. R. Civ. P. 54.02 ("[A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order . . . is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.").

### Wife's Payment of Attorney Fees

We now turn to Husband's argument on appeal regarding the award of attorney fees to Wife. Husband contends the trial court erred when it "failed to reduce the attorney fees to judgment." He argues Wife had the money to pay the lump sum award without a monthly payment plan and points to several of Wife's specific assets and spending habits as evidence of this.

Having determined the "Final Decree for Absolute Divorce" was not actually final for the reasons stated above, we likewise cannot find the trial court abused its discretion in restructuring the original attorney fee award to allow periodic payments of $300 per month. We note it may not have been appropriate for Wife to unilaterally decide to make periodic payments without an order of the court expressly permitting this; however, because the initial divorce decree was not yet final and, therefore, subject to revision in the trial court's discretion, the trial court was within its power to later modify its award to meet her financial needs. *See Stidham v. Fickle Heirs*, 643 S.W.2d 324, 329 (Tenn. 1982) (finding an order

---

[6] We also have serious reservations about the finality of the Divorce Decree based on the lack of specificity in the award of child support. As mentioned, the decree merely states that child support "shall be modified to reflect any change in the income of the parties and the number of days that each party parents," but did not calculate the parties' incomes or state the amount to be paid. It is unclear whether this modification occurred or if it was determined to be unnecessary. The record does not indicate anything else regarding child support occurred until Wife filed her complaint to modify child support two years later.

reserving an issue was "subject to revision at any time before the entry adjudicating all the claims and the rights and liabilities of all the parties."); *Corder*, 231 S.W.3d at 358 (Tenn. Ct. App. 2006).

Given Husband's arguments on appeal, we also review the substance of the trial court's decision to structure the attorney fee award in this manner under an abuse of discretion standard. *Shamblin v. Sylvester*, 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009). Under this standard, this Court will not interfere with an attorney fee award unless the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." *Harness v. Harness*, No. E2012-02469-COA-R3-CV, 2013 WL 6155872, at *3 (Tenn. Ct. App. Nov. 21, 2013) (quoting *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010); *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). "Under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.' " *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)); *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012).

After reviewing the record, we, like the trial court, find monthly payments of $300 to be reasonable under the circumstances and find that the trial court did not abuse its discretion in revising its initial award to reflect this. This being the case, we find that trial court did not abuse its discretion in denying Husband's request to "reduce the award to judgment" and in later permitting Wife to make monthly payments in the amount of $300.

### Modification of Child Support

We also address the modification of child support. Though phrased and adjudicated throughout the pleadings and proceedings as a modification, because the Divorce Decree was not final, the trial court was free to adjust the parties' child support obligation and findings regarding each parties' income as it saw fit, without requiring Mother to show a significant variance in income. *Wall*, 2011 WL 2732269, at *22; *Greer*, 2010 WL 3852321, at *6 n.7.

However, on appeal, Husband takes issue with the trial court's methods for determining each parties' income for purposes of calculating child support, arguing it was improperly done. Husband also contends that the trial court erred in referring the calculation to the Attorney General's office and in General Hale relying on information that was not made a part of the trial court's record. In doing so, Husband argues, "There is no information as to what 'Attorney Hale' reviewed nor is there any basis to support the Trial Court's decision to defer the determination of child support to an outside attorney." Conversely, Wife contends that the child support calculation is supported by the evidence in the record and was properly

calculated.

At the outset, we must observe that the trial court made no factual findings regarding the underlying facts necessary to calculate child support in this case. This confusion is compounded by the varied income amounts given by each of the parties at the hearing. Effective July 1, 2009, Rule 52.01 of the Tennessee Rules of Civil Procedure was amended to require trial courts to make specific findings of facts and conclusions of law in all bench trials:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).

Tenn. R. Civ. P. 52.01 (2012); *see also Poole v. Union Planters Bank, N.A.,* 337 S.W.3d 771, 791 n. 12 (Tenn. Ct. App. 2010). "Without such findings and conclusions, this court is left to wonder on what basis the [trial] court reached its ultimate decision ." *Williams v. Singler*, No. W2012-01253-COA-R3-JV, 2013 WL 3927934, at *9 (Tenn. Ct. App. July 31, 2013) (quoting *In re K.H.,* No. W2008-01144-COA-R3-CV, 2009 WL 1362314, at *8 (Tenn. Ct. App. Oct. 22, 2008)*; In re M.E.W.,* No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004)). This Court routinely remands cases to the trial court with directions to issue such findings and conclusions "because the absence of findings of fact and conclusions of law may render the appellate court unable to conduct an effective review of the trial court's decision." *Williams*, 2013 WL 3927934, at *10 (citing *Estate of Bucy v. McElroy,* No. W2012-02317-COA-R3-CV, 2013 WL 1798911, at *3-4 (Tenn. Ct. App. Apr. 26, 2013) (noting that Rule 52.01 requirement serves the purpose of facilitating appellate review); *Pandey v. Shrivastava,* No.W2012-00059-COA-R3-CV, 2013 WL 657799, at *5-6 (Tenn. Ct. App. Feb. 22, 2013) (remanding case because unable to conduct meaningful review); *Hardin v. Hardin,* No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5-6 (Tenn. Ct. App. Dec. 27, 2012); *In re Connor S.L.,* No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4-5 (Tenn. Ct. App. Nov. 8, 2012); *Simpson v. Fowler,* No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4-5 (Tenn. Ct. App. Aug. 28, 2012)).

Though the child support worksheet was incorporated into the October 2013 Order and included income amounts for each party, we have no way to determine how General Hale arrived at these amounts for each parties' respective incomes or what documents she relied on in her calculation, leaving us "left to wonder on what basis the [trial] court reached its

ultimate decision." Moreover, we are unsure if the evidence General Hale did rely on was even included in the record. This being the case, we are unable to effectively review these calculations, and we must remand this matter to the trial court for appropriate findings of fact and conclusions of law as it pertains to the parties' income and the calculation of child support.

In addition, Husband contends that the trial court improperly deferred the determination to General Hale. We find that it was not improper in and of itself for the trial court to seek assistance from General Hale. However, the trial court failed to follow proper procedure when it did so. Special masters are routinely used in both initial child support and modification cases, especially in complicated cases such as this, when one or both parents are self-employed. *See Bradley v. Bradley*, No. M2009-01234-COA-R3-CV, 2010 WL 2712533 (Tenn. Ct. App. July 8, 2010); *Peterson v. Peterson*, No. M2008-00631-COA-R3-CV, 2009 WL 4041632, at *2-3 (Tenn. Ct. App. Nov. 20, 2009); *Pruett v. Pruett*, No. E2007-00349-COA-R3-CV, 2008 WL 182236, at *5-6 (Tenn. Ct. App. Jan. 22, 2008); *Johnston v. Houston*, 170 S.W.3d 573, 574 (Tenn. Ct. App. 2004). The trial court clearly had the authority to enlist the assistance of General Hale in the role of special master. Tenn. R. Civ. P. 53.01. However, in so doing, both General Hale and the trial court are required to follow a certain procedure that allows both the parties and reviewing courts to understand what has transpired and how the special master arrived at his or her conclusions. Rule 53.04 of the Tennessee Rules of Civil Procedure clearly sets forth both a special master's duties, as well as the trial court's, when a special master has been appointed to assist in a non-jury trial:

> (1) Contents and Filing. The master shall prepare a report upon the matters submitted by the order of reference and, if required to make findings of fact and conclusions of law, the master shall set them forth in the report. The master shall file the report with the clerk of the court and, unless otherwise directed by the order of reference, shall file with it a transcript of the proceedings and of the evidence and the original exhibits. The clerk shall forthwith mail to all parties notice of the filing.

> (2) In Non-jury Actions. In an action to be tried without a jury the court shall act upon the report of the master. Within ten (10) days after being served with notice of the filing of the report, any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6.04. The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

Tenn. R. Civ. P. 53.04. In this case, though perhaps not specifically designated as such, General Hale clearly served in this capacity, yet never submitted a special master's report or a "transcript of the proceedings and of the evidence and the original exhibits" to the trial court for review. Husband likewise was never given an opportunity to make written objections to the report prior to the trial court's adoption of it. This being the case, we find that the trial court erred in failing to follow the procedure set forth in Rule 53.04 and on remand should properly follow this procedure, if it deems assistance in calculating child support necessary.

All other issues raised on appeal are pretermitted by this decision.

**CONCLUSION**

The decision of the trial court is affirmed in part and remanded in part for proceedings consistent with this Opinion. Costs on appeal are assessed against Appellant Jeffrey Walter Johnson and his surety, for which execution may issue if necessary.

_____
PAUL G. SUMMERS, SENIOR JUDGE